# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOSKOWITZ FAMILY LLC, | |
| Plaintiff, | |
| v. | Case No.: |
| NUVASIVE, LLC, and NUVASIVE, INC., | **JURY TRIAL REQUESTED** |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Moskowitz Family LLC files this Complaint and demand for a jury trial seeking relief for patent infringement by Defendants NuVasive, LLC and NuVasive, Inc. (collectively, "NuVasive").  Plaintiff states and alleges the following:

## THE PARTIES

1.     This case is brought by Dr. Nathan Moskowitz, who pioneered and patented groundbreaking advances in the field of spinal surgery.  Those patented advances were shared with NuVasive, one of the world's largest spine implant manufacturers, which, despite knowing of Dr. Moskowitz's patents, used and continues to use his patented technologies without permission, and without providing Dr. Moskowitz with any credit or compensation.

2.     Moskowitz Family LLC was formed by Dr. Nathan C. Moskowitz. Dr. Moskowitz is the lead inventor of the patents assigned to Moskowitz Family LLC.

3.     Dr. Moskowitz is a leading neurosurgeon and an innovator in the field of spinal surgery.  He trained in General Surgery and Neurological Surgery at Johns Hopkins Hospital, where he became Chief Resident, and held several fellowship positions at Johns Hopkins

University.  He is a Fellow of the Academy of the College of Surgeons, the International College

of Surgeons, and the American Academy of Neurological Surgeons.

      4.      Both a researcher and a medical doctor, Dr. Moskowitz received his Ph.D. in

Neurochemistry in 1983 and his medical degree in 1984 from the Mount Sinai School of

Medicine.  He has served as the Chief of the Department of Neurosurgery for Shady Grove

Adventist Hospital, Chief of the Department of Neurosurgery for Montgomery General Hospital,

and Assistant Professor for the Department of Neurosurgery at Johns Hopkins University since

1992.  After a decade of practicing clinical neurosurgery, and consulting on and treating many

patients, he became acutely aware of the complications that can arise during and after surgical

procedures.  Dr. Moskowitz realized that the status quo of spinal surgery technology and

methodology did not lead to the superlative quality of life that his patients deserved.  With the

belief that the field could be, and needed to be, advanced, Dr. Moskowitz focused his career on

researching and developing devices, tools, and methods utilizing more minimally invasive and

improved solutions for spinal surgery to enhance the quality of life for his and other patients with

debilitating spine disease.

      5.      Dr. Moskowitz has published more than thirty research articles and abstracts in

leading scientific and medical publications, such as Science, the Journal of Neurochemistry,

Brain Research, the Journal of Neurosurgery, Biochemical and Biophysical Research

Communications, and Medical Hypotheses.

      6.      Dr. Moskowitz has been recognized with numerous awards for excellence in

patient care and contributions to the medical field.  Among these honors, Dr. Moskowitz has

been listed in the "Who's Who Top Doctors Honors Edition" and "America's Best Doctors."

Dr. Moskowitz has been named one of "America's Best Physicians" for six consecutive years

and has been a recipient of the "Castle Connolly Top Doctor Award" every year since 2008. Additionally, Dr. Moskowitz has been awarded the "America's Most Honored Doctor Award" twice, the "Compassionate Doctor Award" seven times, and the "Patients' Choice Award" twice. Dr. Moskowitz has also been recognized as one of the best doctors in various publications, including *Washingtonian*, *Bethesda Magazine*, *Modern Luxury*, and *Consumers' Checkbook*. Reflecting on his contributions to the spine medical field, Dr. Moskowitz has been recognized as a Top Inventor in Spine by Spinemarket's Annual Patent Power Index and ranked as the number five inventor out of the top twenty.

7.     Moskowitz Family LLC is a limited liability company organized and existing under the laws of the state of Maryland, with its principal place of business located at 212 North Adams Street, Suite 200, Rockville, MD 20850. The company was created to develop human spine related devices and protect and license any resulting inventions and intellectual property.

8.     Moskowitz Family LLC owns a portfolio of nearly one hundred United States patents and seven pending patent applications related to new and improved fixation systems for minimally invasive spinal surgery. The technologies described and claimed in those patents have revolutionized spinal fusion procedures.

9.     Before Moskowitz Family LLC's inventions, spinal fusion patients were far more likely to suffer a host of negative outcomes, such as neural or vascular injury, esophageal injuries, excessive blood loss, prolonged length of surgical time, prolonged recovery, and incomplete return to work. These complications resulted largely from static and non-expandable implants, misplaced screws during the spinal fusion, and plate and/or screw pullout after the operations.

10.    Moskowitz Family LLC's patents solve these issues by providing more minimally invasive spinal implants and improved surgical methods, tools, and systems of implantation for spinal fusion surgery.  For example, some of these inventions include minimal impaction, steerable, and controlled expandable (custom-fit) intervertebral implants, which minimize the challenges of insertion and optimize the fit and placement of the implant between the vertebrae.  Importantly, they also minimize disruption to the muscles and nerve roots.  Another invention includes easily inserted, zero-profile, integrated stand-alone cervical and lumbar spacers, which provide the strength of traditional anterior cervical and lumbar fusions while avoiding high-profile plates and maximizing safe and multi-level placement.  Other inventions include implants that can be inserted in a single step and continuously expanded to desired heights with automatic locking mechanisms to provide a customized fit.  Moskowitz Family LLC's patent portfolio has been recognized in the "Top 20 of Patent Portfolios" in Spinemarket's Annual Patent Power Index and ranked Top 10 in the Interbody category of the Index.

11.    On information and belief, Defendant NuVasive, LLC is a limited-liability company organized under the laws of Delaware, with its principal place of business at 7475 Lusk Boulevard, San Diego, California 92121.  Delaware records dated February 29, 2024, include (a) a "Certificate of Conversion from a Corporation to a Limited Liability Company" and (b) a "Certificate of Formation of Limited Liability Company," each showing that NuVasive, Inc. was statutorily converted into NuVasive, LLC.  Accordingly, pursuant to 6 Del. C. § 18-214 and 8 Del. C. § 266, any liabilities of NuVasive, Inc. continued without interruption in NuVasive, LLC.

12.    On information and belief, Defendant NuVasive, Inc. is or was a corporation organized under the laws of Delaware, sharing the same principal place of business identified

above.  NuVasive, Inc. is alleged to be the same legal entity as—or the predecessor to—

NuVasive, LLC by virtue of the February 2024 conversion and any related corporate

transactions.  To the extent NuVasive, Inc. continues to exist in any capacity, or to the extent its

pre-conversion conduct gives rise to independently actionable claims, NuVasive, Inc. remains

jointly and severally liable—together with NuVasive, LLC (collectively, "NuVasive")—for the

acts of infringement alleged in this Complaint.

13.    On information and belief, NuVasive was acquired by Globus Medical in late

2023.  Before the acquisition, NuVasive was the third-largest player in the global spine market.

NuVasive continues to research, develop, manufacture, market, offer for sale, and sell spinal

surgery products, including the Accused Instrumentalities: BASE™ Interfixated System

("Base"), Brigade™ System ("Brigade"), CoRoent™ Small Interlock System ("CoRoent"),

MOD-EX PL™ Interbody System ("MOD-EX PL"), Simplify® Cervical Disc ("Simplify"),

TLX™ Interbody System ("TLX"), and X-CORE® Expandable Vertebral Body Replacement

(VBR) System ("X-Core")[1].

## THE ASSERTED PATENTS

14.    This is a civil action for infringement of U.S. Patent No. 7,972,363 ("the '363

patent"), U.S. Patent No. 9,005,293 ("the '293 patent"), U.S. Patent No. 9,301,854 ("the '854

patent"), U.S. Patent No. 9,924,940 ("the '940 patent"), U.S. Patent No. 10,016,284 ("the '284

patent"), U.S. Patent No. 10,426,633 ("the '633 patent"), U.S. Patent No. 10,925,753 ("the '753

patent"), U.S. Patent No. 11,376,136 ("the '136 patent"), U.S. Patent No. 11,771,567 ("the '567

patent"), and U.S. Patent No. 12,144,743 ("the '743 patent").

---

[1] X-Core includes the systems referred to as "XLIF Corpectomy" shown in
https://www.youtube.com/watch?v=QiIsoIsyOms.

15.     The '363 patent is entitled "Bi-directional fixating/locking transvertebral body screw/intervertebral cage stand-alone constructs and posterior cervical and lumbar interarticulating joint stapling guns and devices for spinal fusion" and was duly and legally issued by the United States Patent and Trademark Office on July 7, 2011.  The '363 patent stems from Application No. 12/054,335, filed on March 24, 2008.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '363 patent, including the right to sue for and collect past damages.  A true and correct copy of the '363 patent is attached to this Complaint as Exhibit A1.

16.     The '293 patent is entitled "Bi-directional fixating transvertebral body screws and posterior cervical and lumbar interarticulating joint calibrated stapling devices for spinal fusion" and was duly and legally issued by the United States Patent and Trademark Office on April 14, 2015.  The '293 patent stems from Application No. 13/108,982, filed on May 16, 2011. Moskowitz Family LLC owns the entire right, title, and interest in and to the '293 patent, including the right to sue for and collect past damages.  A true and correct copy of the '293 patent is attached to this Complaint as Exhibit B1.

17.     The '854 patent is entitled "Bi-directional fixating transvertebral body screws and posterior cervical and lumbar interarticulating joint calibrated stapling devices for spinal fusion" and was duly and legally issued by the United States Patent and Trademark Office on April 5, 2016.  The '854 patent stems from Application No. 13/741,361, filed on January 14, 2013. Moskowitz Family LLC owns the entire right, title, and interest in and to the '854 patent, including the right to sue for and collect past damages.  A true and correct copy of the '854 patent is attached to this Complaint as Exhibit C1.

18.     The '940 patent is entitled "Bi-directional fixating transvertebral body screws, zero-profile horizontal intervertebral miniplates, expansile intervertebral body fusion devices, and posterior motion-calibrating interarticulating joint stapling device for spinal fusion" and was duly and legally issued by the United States Patent and Trademark Office on March 27, 2018. The '940 patent stems from Application No. 13/093,812, filed on April 25, 2011. Moskowitz Family LLC owns the entire right, title, and interest in and to the '940 patent, including the right to sue for and collect past damages. A true and correct copy of the '940 patent is attached to this Complaint as Exhibit D1.

19.     The '284 patent is entitled "Zero-profile expandable intervertebral spacer devices for distraction and spinal fusion and a universal tool for their placement and expansion" and was duly and legally issued by the United States Patent and Trademark Office on July 10, 2018. The '284 patent stems from Application No. 15/820,232, filed on November 21, 2017. Moskowitz Family LLC owns the entire right, title, and interest in and to the '284 patent, including the right to sue for and collect past damages. A true and correct copy of the '284 patent is attached to this Complaint as Exhibit E1.

20.     The '633 patent is entitled "Zero-profile expandable intervertebral spacer devices for distraction and spinal fusion and a universal tool for their placement and expansion" and was duly and legally issued by the United States Patent and Trademark Office on October 1, 2019. The '633 patent stems from Application No. 16/025,667, filed on July 2, 2018. Moskowitz Family LLC owns the entire right, title, and interest in and to the '633 patent, including the right to sue for and collect past damages. A true and correct copy of the '633 patent is attached to this Complaint as Exhibit F1.

21.    The '753 patent is entitled "Bi-directional fixating/locking transvertebral body screw/intervertebral cage stand-alone constructs" and was duly and legally issued by the United States Patent and Trademark Office on February 23, 2021.  The '753 patent stems from Application No. 16/362,294, filed on March 22, 2019.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '753 patent, including the right to sue for and collect past damages.  A true and correct copy of the '753 patent is attached to this Complaint as Exhibit G1.

22.    The '136 patent is entitled "Expandable spinal implant and tool system" and was duly and legally issued by the United States Patent and Trademark Office on July 5, 2022.  The '136 patent stems from Application No. 16/744,755, filed on January 16, 2020.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '136 patent, including the right to sue for and collect past damages.  A true and correct copy of the '136 patent is attached to this Complaint as Exhibit H1.

23.    The '567 patent is entitled "Artificial disc system" and was duly and legally issued by the United States Patent and Trademark Office on October 3, 2023.  The '567 patent stems from Application No. 17/487,360, filed on September 28, 2021.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '567 patent, including the right to sue for and collect past damages.  A true and correct copy of the '567 patent is attached to this Complaint as Exhibit I1.

24.    The '743 patent is entitled "Intervertebral implant" and was duly and legally issued by the United States Patent and Trademark Office on November 19, 2024.  The '743 patent stems from Application No. 17/492,996, filed on October 4, 2021.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '743 patent, including the right to sue

for and collect past damages.  A true and correct copy of the '743 patent is attached to this

Complaint as Exhibit J1.

25.    Moskowitz Family LLC has not practiced any of the Asserted Patents through

commercial manufacture, sale, offer for sale, or importation of patented articles and, therefore, is

exempt from the marking requirements under 35 U.S.C. § 287(a).  While Moskowitz Family

LLC developed and manufactured certain prototypes embodying aspects of the claimed

inventions, those prototypes were created solely for research and demonstration purposes and

were manufactured prior to the issuance of any of the Asserted Patents.  These prototypes were

never sold, offered for sale, or otherwise commercialized.  Further, no licensee or sublicensee

has made, sold, offered for sale, or imported any article practicing any claim of the Asserted

Patents.  Accordingly, Moskowitz Family LLC's ability to recover pre-suit damages is not barred

by § 287(a).

26.    To the extent applicable, Moskowitz Family LLC has complied with 35 U.S.C.

§ 287 for each of the Asserted Patents.

## JURISDICTION AND VENUE

27.    This is an action for patent infringement arising under the patent laws of the

United States, 35 U.S.C. §§ 101, *et seq*.  This Court has original subject matter jurisdiction over

this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

28.    This Court has personal jurisdiction over both NuVasive consistent with the Due

Process Clause of the United States Constitution and the Delaware Long-Arm Statute because

NuVasive is incorporated in the State of Delaware, rendering it "at home" in this State, and the

claims asserted herein arise from or relate to NuVasive's substantial, continuous, and systematic

contacts with Delaware, including (1) transacting business and performing work or services in

this State, (2) contracting to supply services or things in this State, (3) committing acts giving rise to this action in this State and outside of the State, and (4) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from services or things used in the State, including the Accused Instrumentalities.

29.     NuVasive has committed acts within this judicial district giving rise to this lawsuit.  On information and belief, NuVasive—including through its agents, subsidiaries, intermediaries, and/or affiliates—has made, used, sold, offered for sale, and/or imported the Accused Instrumentalities in Delaware and in this judicial district.  On information and belief, NuVasive also employs a substantial workforce, including contractors and/or sales representatives, within the State; enters into contracts with Delaware-based entities; solicits business from and/or recruits Delaware residents; has operations and customers in Delaware; and markets, sells, ships, and distributes its infringing products throughout the State and this judicial district.  The activities described in this paragraph, including those constituting patent infringement, are detailed further in the following sections of this Complaint.

30.     Venue is proper in this judicial district pursuant to at least 28 U.S.C. § 1400 because NuVasive is incorporated in the State of Delaware and therefore resides in this State under §1400(b).

**PRE-SUIT DISCUSSIONS**

31.     Dr. Moskowitz has engaged in extensive discussions with NuVasive regarding his patented and patent-pending spinal inventions.  These interactions spanned from 2010 to at least 2011, and involved multiple meetings, email exchanges, and direct correspondence with NuVasive executives and legal counsel.  Throughout this time, Dr. Moskowitz disclosed his innovative spinal technologies, including zero-profile interbody fusion devices.  Despite

NuVasive's repeated expressions of interest, the company ultimately chose not to license or acquire his technology. Instead, NuVasive systematically absorbed Dr. Moskowitz's proprietary concepts, developed competing products, and proceeded to commercialize them—without any compensation to him.

32. The spinal fusion and spinal implant industry is among the most patent-intensive segments of the medical device sector. Hundreds of new spine-related patents issue each year, and market participants—including NuVasive—routinely monitor competitor patent activity to assess design clearance, evaluate acquisition opportunities, and manage IP risk. NuVasive is one of the world's largest spine implant manufacturers and is an active participant in patent due diligence, prosecution, and enforcement within the spinal device space. As such, NuVasive is uniquely positioned to monitor—and in fact, on information and belief, does monitor—publicly available patent activity related to spinal fusion innovations, including those of Moskowitz Family LLC.

33. Dr. Moskowitz's first documented interaction with NuVasive dates back to 2010, when he informed Jason Pfeiffer (NuVasive's Spine Specialist, Maryland & Washington D.C.) and Dennis Farrell (NuVasive's Sales Director, Atlantic) that he would like to discuss his spinal fusion innovations. Mr. Pfeiffer and Mr. Farrell passed this information to Jonathan Spangler, NuVasive's Vice President & Chief Patent Counsel. Mr. Spangler contacted Dr. Moskowitz by email, and requested that Dr. Moskowitz enter an NDA. Mr. Spangler explained that once the NDA was in place, Dr. Moskowitz would be "free to submit any information you feel would be helpful in getting us up to speed on your concepts. Typical items include patent applications, Power Point presentations, prototypes, photographs, etc." Mr. Spangler also explained that he would present Dr. Moskowitz's concept to NuVasive's New Technology Review Committee.

Per Mr. Spangler the "New Tech Review Committee is a cross-functional body of decision-makers in the company, including Executive Management (e.g. President, VPs from Marketing, Development, Research, Clinical, Legal, and IP) and a host of leaders and technical experts from Marketing and Development," and its "purpose is to bring the decision-makers together, assess each submission from all angles, and provide our feedback in a responsive and transparent manner."

34.    After the NDA was executed, Mr. Spangler suggested that Dr. Moskowitz arrange a meeting with Pat Miles, NuVasive's President of the Americas, who was in charge of both marketing and development globally for NuVasive.  In October 2010, Dr. Moskowitz met with Mr. Miles to present his innovative spinal implant technology and explain the clinical advantages of his innovations.  Mr. Miles asked about regulatory strategy and patent status, and Dr. Moskowitz explained his vision to obtain FDA clearance and confirmed patents covering the devices were pending.  Mr. Miles expressed clear interest and stated he would present the technology to NuVasive's New Technology Review Committee.  Shortly thereafter, Mr. Miles sent Dr. Moskowitz an email requesting "clarification on patent status" and explaining "[w]ith a better understanding of IP status, we can be more informed with regard to the protectability of the business."  In November 2010, Dr. Moskowitz reiterated to Mr. Miles and Mr. Spangler that he had issued and pending patents, including those directed to non-pedicle screw based intervertebral fusion and artificial discs.  In February 2011, Dr. Moskowitz informed Mr. Miles and Mr. Spangler that two additional patents had issued on a zero profile cervical and lumbar fusion device and that other patent publications described zero-profile products with novel and unique locking mechanisms.  Mr. Spangler requested additional, non-public information about Dr. Moskowitz's allowed intellectual property in order to "review the allowance and update the

New Tech Review committee." In response, Dr. Moskowitz sent the text, figures, and claims of his recently allowed patent, which issued as the '363 patent. In March 2011, Dr. Moskowitz again referred Mr. Spangler and Mr. Miles to U.S. Pat. Pub. No. 2008/0177307 A1 (which issued as the '363 patent), and reminded them that claims to zero profile intervertebral fusion devices were allowed by the USPTO. In May 2011, Mr. Spangler acknowledged that Dr. Moskowitz's patented zero profile implant is "a clever design and augmented via the sound IP protection," confirming that the company had knowledge of at least some of Dr. Moskowitz's patent rights as early as that time. Following these exchanges, Dr. Moskowitz and NuVasive continued to communicate regarding his innovative and patented technologies, including communications in September 2011 about Dr. Moskowitz's "posterior artificial lumbar disc," during which Dr. Moskowitz reiterated that he had "patent granted IP, prototypes and testing." Throughout these interactions, NuVasive consistently encouraged Dr. Moskowitz to submit additional concepts for review by its New Technology Review Committee.

35.    In 2015, Dr. Moskowitz had his attorney formally put NuVasive on notice regarding his patent rights. In a letter sent via Federal Express addressed to Mr. Spangler, NuVasive's Vice President and Chief Patent Counsel, Dr. Moskowitz's legal counsel informed NuVasive of his patent portfolio. The letter identified the more than thirty issued patents and pending applications contained in Dr. Moskowitz's patent portfolio at the time. The letter specifically identified the asserted '293 and '363 patents, United States Pat. App. Pub. No. 2011-0208312 A1, which issued as the asserted '940 patent, and United States Pat. App. Pub. No. 2013-0282017 A1, which issued as the asserted '854 patent. The other asserted patents are all continuations of the pending applications identified in the 2015 letter, meaning they share the same technical description and Figures as the applications Dr. Moskowitz shared with NuVasive.

The letter stated that Dr. Moskowitz's patent portfolio "may be of interest to NuVasive," sought confirmation that Mr. Spangler was the appropriate person for this type of correspondence, and informed Mr. Spangler that Dr. Moskowitz looked forward to NuVasive's response.

36.    Despite receiving this formal notice, NuVasive never engaged in licensing discussions.  Instead, it proceeded to launch spinal fusion products that embodied the same technologies that Dr. Moskowitz had disclosed years earlier—technology NuVasive had repeatedly expressed interest in but refused to license.

37.    On information and belief, NuVasive maintains a dedicated intellectual property team within its spinal division that systematically monitors competitor patents and patent applications relevant to spinal implants and related surgical systems.  This team routinely tracks filings with the United States Patent and Trademark Office (USPTO) to assess competitive threats and opportunities.  This monitoring practice is further confirmed by communications from Mr. Spangler, who acknowledged that "it's always best to know what's out there in order to best protect around it," and Mr. Miles, who stated "[w]ith a better understanding of IP status, we can be more informed with regard to the protectability of the business," reflecting NuVasive's awareness and strategic tracking of external patent activity.  Given the long-standing visibility of Dr. Moskowitz's work, and NuVasive's direct prior interactions with his portfolio, on information and belief, NuVasive's IP personnel continued to monitor for the issuance of patents related to the patents and applications previously identified in Dr. Moskowitz's 2015 notice letter.

38.    On further information and belief, NuVasive regularly receives and reviews a variety of industry publications and patent monitoring services that track innovation and intellectual property developments in the spinal surgery and spinal implant fields.  These include,

but are not limited to, SpineMarket's Patent Power Index, which highlights top inventors, portfolios, and newly issued patents in the spine industry.  Dr. Moskowitz has been repeatedly featured in these publications, with each of the Asserted Patents identified by name and inventor. NuVasive's routine engagement with these industry-standard sources, combined with its internal intellectual property surveillance practices, further supports the inference that NuVasive had actual knowledge of—or was at minimum willfully blind to—the existence and relevance of each of the Asserted Patents.

39.     Alternatively, and in addition to NuVasive's actual knowledge of the Asserted Patents, NuVasive was, at a minimum, willfully blind to the fact that its spinal implant systems infringed Dr. Moskowitz's patents.  On information and belief, NuVasive has deliberately avoided confirming whether its products overlapped with the Asserted Patents' claims, including the claims that Dr. Moskowitz repeatedly disclosed between 2010 and 2015.  Dr. Moskowitz's disclosures included detailed descriptions, drawings, and claim summaries—as well as a formal notice letter in 2015 that identified the '293 and '363 patents by number, attached a copy of the '293 patent, and identified over thirty related applications, including the published applications that issued as the '940 and '854 patents. The other Asserted Patents share the same technical description and Figures as the applications Dr. Moskowitz shared with NuVasive, and claim subject matter that Dr. Moskowitz disclosed to NuVasive between 2010 and 2015.

40.     Despite this detailed notice, on information and belief, NuVasive never initiated a clearance analysis, infringement review, and/or licensing discussion with Dr. Moskowitz.  On information and belief, NuVasive then proceeded to commercialize multiple product families— Base, Brigade, CoRoent, Mod-Ex PL, Simplify, TLX, and X-Core—that embodied technologies

described in the disclosed patents and applications, without conducting a good-faith inquiry into infringement.

41.     This pattern of avoidance persisted even as NuVasive repeatedly encountered Dr. Moskowitz's patent publications and cited them in Information Disclosure Statements submitted to the USPTO during its own patent prosecutions.  Upon information and belief, NuVasive also receives and reviews industry publications, including the SpineMarket Patent Power Index, which repeatedly listed Dr. Moskowitz and his Asserted Patents.  Taken together, these facts indicate that NuVasive subjectively believed there was a high risk that its products infringed Dr. Moskowitz's patents but deliberately avoided confirming that fact—constituting willful blindness.

42.     To this day, NuVasive has never engaged in meaningful licensing discussions with Dr. Moskowitz or Moskowitz Family LLC.  Instead, NuVasive proceeded to launch spinal fusion products that embodied the same technologies that Dr. Moskowitz had disclosed years earlier—technologies NuVasive had repeatedly expressed interest in but refused to license.

43.     NuVasive does not have a license to any of the Asserted Patents, either express or implied.

44.     On information and belief, NuVasive has not taken any affirmative steps to avoid infringing any of the Asserted Patents after learning of them.

## <u>NUVASIVE'S KNOWLEDGE AND WILLFULNESS</u>

45.     Moskowitz Family LLC incorporates by reference all factual allegations set forth in the preceding sections, including those regarding NuVasive's direct communications with Dr. Moskowitz, knowledge of his patent portfolio, receipt of the formal notice letter in 2015, and encounters with and citations of Dr. Moskowitz's patents during its own patent prosecutions.

The allegations of actual knowledge and willful blindness set forth in the Pre-Suit Discussions section apply equally to each of the Asserted Patents. NuVasive's conduct as described—both prior to and following issuance of the Asserted Patents—demonstrates a pattern of deliberate indifference, inaction, and continued commercialization of products embodying the patented inventions, supporting a uniform inference of willful infringement.

46.     For example, since at least 2013, NuVasive has encountered and cited to patents and published applications from the Dr. Moskowitz's patent families in Information Disclosure Statements submitted to the U.S. Patent and Trademark Office. On information and belief, these encounters and citations occurred across multiple NuVasive spinal implant patent applications. This pattern demonstrates repeated internal recognition of Moskowitz Family LLC's inventions over an extended period.

47.     To the extent necessary, these allegations are pled in the alternative to reinforce that NuVasive either had actual knowledge of, or was willfully blind to, each of the Asserted Patents and its infringement thereof.

## COUNT I

### (Infringement of the '363 Patent)

48.     Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

49.     On information and belief, NuVasive has directly infringed and continues to directly infringe one or more claims of the '363 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing the '363 Accused Instrumentalities. NuVasive's '363 Accused Instrumentalities include, but are not

limited to, the Base and CoRoent systems and instrumentation, and any other NuVasive product, either alone or in combination, that operates in a reasonably similar manner.

50.     Attached to this Complaint as Exhibits A2 and A3 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claim 1 of the '363 patent are met by the '363 Accused Instrumentalities.

51.     NuVasive's infringement of the '363 patent has also been indirect.

52.     On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe one or more claims of the '363 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '363 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '363 patent.

53.     For example, NuVasive has supplied, and continues to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '363 Accused Instrumentalities, with knowledge that making and/or using the '363 Accused Instrumentalities in accordance with its instructions directly infringed/infringes at least claim 1 of the '363 patent, or with willful blindness to that fact.  On information and belief, NuVasive will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use its '363 Accused Instrumentalities in ways that directly infringe the '363 patent, and NuVasive has encouraged and will continue to encourage these acts with the specific intent to infringe the '363 patent.

Further, NuVasive provides information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and/or use NuVasive's '363 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '363 patent. Alternatively, NuVasive has acted with willful blindness to these facts. On information and belief, NuVasive knows that there is a high probability that the making and/or use of NuVasive's '363 Accused Instrumentalities constitutes direct infringement of the '363 patent but took deliberate actions to avoid learning of these facts.

54. On information and belief, NuVasive's inducement of third parties occurred after it had actual knowledge of, or was willfully blind to, the '363 patent. The timing of its conduct and the nature of its continued support to third parties demonstrate specific intent to cause infringement.

55. On information and belief, NuVasive had actual knowledge of the inventions described and claimed in the '363 patent since at least shortly after its issuance in July 2011, as described in Paragraphs above and below.

56. Alternatively, to the extent actual knowledge is disputed, NuVasive was willfully blind to the existence and relevance of the '363 patent. Despite receiving express notice of the issued patent from Dr. Moskowitz's counsel in June 2015, NuVasive failed to conduct any known non-infringement or clearance analysis, ignored Dr. Moskowitz's invitation for licensing discussions, and proceeded to commercialize spinal implants embodying the technologies claimed in the '363 patent. As further detailed above and below, NuVasive's deliberate avoidance of confirming infringement, despite USPTO citations and industry publications (such

as, for example, SpineMarket's publications) repeatedly referencing the '363 patent, supports a strong inference of willful blindness.

57.    For example, NuVasive has been aware of the specific inventions described and claimed in the '363 patent since before the patent issued in July 2011.  Between 2010 and 2011, and again in 2015, NuVasive received technical information from Dr. Moskowitz detailing technologies that were ultimately claimed in the '363 patent.  In February 2011, Dr. Moskowitz sent Mr. Spangler and Mr. Miles the specification, figures, and allowed claims of the application that issued as the '363 patent shortly thereafter.  In March 2011, Dr. Moskowitz again informed Mr. Spangler and Mr. Miles that the patent office allowed claims to zero profile intervertebral fusion devices and referred them to the published application that led to the '363 patent (U.S. Pat. Pub. No. 2008/0177307 A1).  In 2015, Dr. Moskowitz's legal counsel sent a letter to NuVasive's Vice President and Chief Patent Counsel identifying the '363 patent by number, title, filing date, and issue date.  This letter stated that Dr. Moskowitz's patent portfolio "may be of interest to NuVasive" and offered to initiate further discussions.

58.    Despite receiving formal notice of the allowed claims of the '363 patent on several occasions, NuVasive never engaged in licensing discussions.  Instead, it proceeded to launch spinal fusion products that embodied the same technologies that Moskowitz had disclosed years earlier—technology NuVasive had repeatedly expressed interest in but refused to license. The technologies described in the '363 patent are embodied in at least NuVasive's Base and CoRoent systems. NuVasive continued to develop and commercialize these product families through the damages period beginning in 2019.  The continuity in product line and technology, coupled with NuVasive's contemporaneous internal citations to the '363 patent, supports a plausible inference of knowledge of infringement.

59.     NuVasive's awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2011 through its active engagement with Dr. Moskowitz, during which NuVasive sought and received technical information, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's intellectual property.  By 2015, after years of meetings and detailed disclosures, Dr. Moskowitz formally placed NuVasive on notice of his patent rights through written correspondence from legal counsel.  The letter sent to NuVasive explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the publication number, filing date, issue date, and title of each.  The issued '363 patent was expressly identified in Dr. Moskowitz's 2015 letter to NuVasive.

60.     On information and belief, NuVasive patent prosecution activities further confirm that it has been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '363 patent.  On information and belief, NuVasive has continued to monitor Moskowitz Family LLC's patent portfolio since becoming aware of it by no later than 2015.  For example,  NuVasive has disclosed the '363 patent to the Patent Office at least two times in Information Disclosure Statements submitted during prosecution of its own patent applications— starting as early as August 2017.  And NuVasive has disclosed family members of the '363 patent to the Patent Office at least 8 times in Information Disclosure Statements submitted during prosecution of its own patent applications.

61.     On information and belief, NuVasive has known that making and/or using its '363 Accused Instrumentalities constitutes an act of direct infringement of the '363 patent since at least shortly after the issuance of the '363 patent in July 2011.  NuVasive has also had this knowledge since at least June 2015, when it received Dr. Moskowitz's letter, which expressly

identified the '363 patent.  NuVasive was further aware of its infringement as of at least August 2017, when it first cited the '363 patent during prosecution of its own patents, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent NuVasive lacked actual knowledge of its infringement, such lack of knowledge resulted from its deliberate decision to avoid learning these facts.  NuVasive, therefore, knew or was willfully blind to the fact that making and/or using the '363 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '363 patent.

62.     On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe the '363 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) of at least claim 1 of the '363 patent.  For example, NuVasive has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '363 Accused Instrumentalities (such as intervertebral cages) to these third parties with full knowledge of the 363 patent.  These third parties have assembled the components to make and use the '363 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to assemble and use the components of the '363 Accused Instrumentalities in ways that infringed/infringe the '363 patent.  NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, NuVasive's components constituted/constitute a material part of the inventions claimed in the '363 patent.

NuVasive supplied/supplies these components with knowledge of the '363 patent and knowledge that the components were/are especially made for use in an infringing manner.

63.     On information and belief, NuVasive has also indirectly infringed and continue to indirectly infringe the '363 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '363 Accused Instrumentalities (such as intervertebral cages) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 1 of the '363 patent if such combination occurred within the United States.  For example, NuVasive has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '363 Accused Instrumentalities with full knowledge of the '363 patent.  These third parties have made or used the '363 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '363 Accused Instrumentalities and use them in ways that would infringe the '363 patent if such combination occurred within the United States.  NuVasive provides these instructions to the third parties with the knowledge that assembly and usage in accordance with its instructions would infringe the '363 patent if such assembly and usage took place in the United States.  Additionally, NuVasive's components are especially made and/or especially adapted for use in an infringing manner and NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

64.     On information and belief, NuVasive's actions demonstrate an intent not only to cause the acts described herein that form the basis of direct infringement by third parties (or

would form the basis of direct infringement if they occurred within the United States), but also to cause these acts with the specific intent to infringe the '363 patent.  At a minimum, NuVasive's conduct demonstrates that NuVasive either knew or should have known that the acts of such third parties directly infringed/infringe the '363 patent (or would infringe if those acts occurred within the United States).

65.    NuVasive's infringement of the '363 patent has been and continues to be willful and merits enhanced damages under 35 U.S.C. § 284.  NuVasive had actual knowledge of the patent shortly after its issuance, and alternatively was willfully blind to its existence and relevance.  On information and belief, NuVasive's internal IP team reviewed the '363 patent during prosecution of closely related spinal fusion patents.  NuVasive cited the '363 patent, received direct notice of the patent and its family in 2015, and, on information and belief, monitored spine-related patent portfolios, including that of Moskowitz Family LLC.

66.    Despite this knowledge, NuVasive continued to manufacture, market, and sell the accused spinal implant systems.  NuVasive did not seek a license from Moskowitz Family LLC, did not redesign the relevant features, and did not assert any non-infringement or invalidity positions.  Nor did NuVasive take any steps to resolve its infringement risk or seek clarification from Dr. Moskowitz.  These facts, in conjunction with NuVasive's failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

67.    NuVasive's ongoing commercialization of the '363 Accused Instrumentalities—despite notice and without asserting any good-faith basis for believing the '363 patent was invalid or not infringed—demonstrates egregious disregard for Moskowitz Family LLC's patent rights and supports an award of enhanced damages.

68.     Moskowitz Family LLC has been damaged as a result of NuVasive's willful infringement.

69.     On information and belief, NuVasive will continue to infringe one or more claims of the '363 patent unless and until it is enjoined by this Court.

70.     On information and belief, NuVasive has caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '363 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until NuVasive are enjoined from infringing the claims of the '363 patent.

## COUNT II

### (Infringement of the '293 Patent)

71.     Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

72.     On information and belief, NuVasive has directly infringed and continues to directly infringe one or more claims of the '293 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing the '293 Accused Instrumentalities.  NuVasive's '293 Accused Instrumentalities include, but are not limited to, the Base, Brigade, and CoRoent systems and instrumentation, and any other NuVasive product, either alone or in combination, that operates in a reasonably similar manner.

73.     Attached to this Complaint as Exhibits B2-B4 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claim 43 of the '293 patent are met by the '293 Accused Instrumentalities.

74.     NuVasive's infringement of the '293 patent has also been indirect.

75.     On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe one or more claims of the '293 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '293 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '293 patent.

76.     For example, NuVasive has supplied, and continues to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '293 Accused Instrumentalities, with knowledge that making and/or using the '293 Accused Instrumentalities in accordance with its instructions directly infringed/infringes at least claim 43 of the '293 patent, or with willful blindness to that fact.  On information and belief, NuVasive will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use its '293 Accused Instrumentalities in ways that directly infringe the '293 patent, and NuVasive has encouraged and will continue to encourage these acts with the specific intent to infringe the '293 patent. Further, NuVasive provides information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and/or use NuVasive's '293 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '293 patent.  Alternatively, NuVasive has acted with willful blindness

to these facts.  On information and belief, NuVasive knows that there is a high probability that the making and/or use of NuVasive's '293 Accused Instrumentalities constitutes direct infringement of the '293 patent but took deliberate actions to avoid learning of these facts.

77.    On information and belief, NuVasive's inducement of third parties occurred after it had actual knowledge of, or was willfully blind to, the '293 patent.  The timing of its conduct and the nature of its continued support to third parties demonstrate specific intent to cause infringement.

78.    On information and belief, NuVasive had actual knowledge of the inventions described and claimed in the '293 patent since at least shortly after its issuance in April 2015, as described in Paragraphs above and below.

79.    Alternatively, to the extent actual knowledge is disputed, NuVasive was willfully blind to the existence and relevance of the '293 patent.  Despite receiving a full copy of the issued patent from Dr. Moskowitz's counsel in June 2015, NuVasive failed to conduct any known non-infringement or clearance analysis, ignored Dr. Moskowitz's invitation for licensing discussions, and proceeded to commercialize spinal implants embodying the technologies claimed in the '293 patent.  As further detailed above and below, NuVasive's deliberate avoidance of confirming infringement, despite USPTO citations and industry publications (such as, for example, SpineMarket's publications) repeatedly referencing the '293 patent, supports a strong inference of willful blindness.

80.    For example, NuVasive has been aware of the specific inventions described and claimed in the '293 patent since before the patent issued in April 2015.  Between 2010 and 2011, and again in 2015, NuVasive received technical information from Dr. Moskowitz detailing technologies that were ultimately claimed in the '293 patent.  In 2015, Dr. Moskowitz's legal

counsel sent a letter to NuVasive's Vice President and Chief Patent Counsel expressly identifying the '293 patent by number, title, filing date, and issue date, and attaching a full copy of the patent. This letter expressly stated that Dr. Moskowitz's patent portfolio "may be of interest to NuVasive" and offered to initiate further discussions.

81.     Despite receiving this formal notice, NuVasive never engaged in licensing discussions. Instead, it proceeded to launch spinal fusion products that embodied the same technologies that Moskowitz had disclosed years earlier—technology NuVasive had repeatedly expressed interest in but refused to license. The technologies described in the '293 patent are embodied in at least NuVasive's Base, Brigade, and CoRoent systems. NuVasive continued to develop and commercialize these product families through the damages period beginning in 2019. The continuity in product line and technology, coupled with NuVasive's contemporaneous internal citations to the '293 patent, support a plausible inference of knowledge of infringement.

82.     NuVasive awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2011 through its active engagement with Dr. Moskowitz, during which NuVasive sought and received technical information, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's intellectual property. By 2015, after years of meetings and detailed disclosures, Dr. Moskowitz formally placed NuVasive on notice of his patent rights through written correspondence from legal counsel. The letter sent to NuVasive explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the publication number, filing date, issue date, and title of each. The '293 patent was discussed in the body of the 2015 letter, and a copy of the patent was attached thereto.

83.    On information and belief, NuVasive patent prosecution activities further confirm that it has been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '293 patent.  On information and belief, NuVasive has continued to monitor Moskowitz Family LLC's patent portfolio since becoming aware of it by no later than 2015.  For example, NuVasive has disclosed the '293 patent to the Patent Office at least two times in Information Disclosure Statements submitted during prosecution of its own patent applications— starting as early as August 2017.  And NuVasive has disclosed family members of the '293 patent to the Patent Office at least once in Information Disclosure Statements submitted during prosecution of its own patent applications.

84.    On information and belief, NuVasive has known that making and/or using its '293 Accused Instrumentalities constitutes an act of direct infringement of the '293 patent since at least shortly after the issuance of the '293 patent in April 2015.  NuVasive has also had this knowledge since at least June 2015, when it received Dr. Moskowitz's letter, which expressly discussed and attached the '293 patent.  NuVasive was further aware of its infringement as of at least August 2017, when it first cited the '293 patent during prosecution of its own patents, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent NuVasive lacked actual knowledge of its infringement, such lack of knowledge resulted from its deliberate decision to avoid learning these facts. NuVasive, therefore, knew or was willfully blind to the fact that making and/or using the '293 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '293 patent.

85.    NuVasive's infringement of the '293 patent has been and continues to be willful and merits enhanced damages under 35 U.S.C. § 284.  NuVasive had actual knowledge of the

patent shortly after its issuance, and alternatively was willfully blind to its existence and relevance. On information and belief, NuVasive's internal IP team reviewed the '293 patent during prosecution of closely related spinal fusion patents. NuVasive cited the '293 patent and/or its publication, received direct notice of the patent and its family in 2015, and, on information and belief, monitored spine-related patent portfolios, including that of Moskowitz Family LLC.

86.     Despite this knowledge, NuVasive continued to manufacture, market, and sell the '293 Accused Instrumentalities. NuVasive did not seek a license from Moskowitz Family LLC, did not redesign the relevant features, and did not assert any non-infringement or invalidity positions. Nor did NuVasive take any steps to resolve its infringement risk or seek clarification from Dr. Moskowitz. These facts, in conjunction with NuVasive's failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

87.     NuVasive's ongoing commercialization of the '293 Accused Instrumentalities—despite notice and without asserting any good-faith basis for believing the '293 patent was invalid or not infringed—demonstrates egregious disregard for Moskowitz Family LLC's patent rights and supports an award of enhanced damages.

88.     Moskowitz Family LLC has been damaged as a result of NuVasive's willful infringement.

89.     On information and belief, NuVasive will continue to infringe one or more claims of the '293 patent unless and until it is enjoined by this Court.

90.     On information and belief, NuVasive has caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '293 patent. Moskowitz

Family LLC will suffer further irreparable injury and damage, for which it has no adequate

remedy at law, unless and until NuVasive are enjoined from infringing the claims of the '293

patent.

## COUNT III

### (Infringement of the '854 Patent)

91.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if

fully stated herein.

92.    On information and belief, NuVasive has directly infringed and continues to

directly infringe one or more claims of the '854 patent under 35 U.S.C. § 271(a), either literally

or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or

imported and is currently making, using, selling, offering for sale, and/or importing the

'854 Accused Instrumentalities.  NuVasive's '854 Accused Instrumentalities include, but are not

limited to, the Brigade and CoRoent systems and instrumentation, and any other NuVasive

product, either alone or in combination, that operates in a reasonably similar manner.

93.    Attached to this Complaint as Exhibits C2 and C3 are representative charts that,

on information and belief, describe how, as a non-limiting example, the elements of exemplary

claim 1 of the '854 patent are met by the '854 Accused Instrumentalities.

94.    NuVasive's infringement of the '854 patent has also been indirect.

95.    On information and belief, NuVasive has indirectly infringed and continues to

indirectly infringe one or more claims of the '854 patent under 35 U.S.C. § 271(b) because it has

induced, and continues to induce, third parties (including hospitals, surgeons, medical

professionals, distributors, manufacturers, and independent sales representatives) to make, use,

sell, offer to sell, and/or import the '854 Accused Instrumentalities.  Such making, using, selling,

offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '854 patent.

96.     For example, NuVasive has supplied, and continues to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '854 Accused Instrumentalities, with knowledge that making and/or using the '854 Accused Instrumentalities in accordance with its instructions directly infringed/infringes at least claim 1 of the '854 patent, or with willful blindness to that fact.  On information and belief, NuVasive will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use its '854 Accused Instrumentalities in ways that directly infringe the '854 patent, and NuVasive has encouraged and will continue to encourage these acts with the specific intent to infringe the '854 patent. Further, NuVasive provides information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and/or use NuVasive's '854 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '854 patent.  Alternatively, NuVasive has acted with willful blindness to these facts.  On information and belief, NuVasive knows that there is a high probability that the making and/or use of NuVasive's '854 Accused Instrumentalities constitutes direct infringement of the '854 patent but took deliberate actions to avoid learning of these facts.

97.     On information and belief, NuVasive's inducement of third parties occurred after it had actual knowledge of, or was willfully blind to, the '854 patent.  The timing of its conduct

and the nature of its continued support to third parties demonstrate specific intent to cause infringement.

98.     On information and belief, NuVasive had actual knowledge of the inventions described and claimed in the '854 patent since at least shortly after its issuance in April 2016, as described in Paragraphs above and below.

99.     Alternatively, to the extent actual knowledge is disputed, NuVasive was willfully blind to the existence and relevance of the '854 patent. Despite receiving notice of Dr. Moskowitz's patent portfolio, including the patent publication that became the '854 patent, from Dr. Moskowitz's counsel in June 2015, NuVasive failed to conduct any known non-infringement or clearance analysis, ignored Dr. Moskowitz's invitation for licensing discussions, and proceeded to commercialize spinal implants embodying the technologies claimed in the '854 patent. As further detailed above and below, NuVasive's deliberate avoidance of confirming infringement, despite USPTO citations and industry publications (such as, for example, SpineMarket's publications) repeatedly referencing the '854 patent, supports a strong inference of willful blindness.

100.    For example, NuVasive has been aware of the specific inventions described and claimed in the '854 patent since before the patent issued in April 2016. Between 2010 and 2011, and again in 2015, NuVasive received technical information from Dr. Moskowitz detailing technologies that were ultimately claimed in the '854 patent. Dr. Moskowitz's 2015 notice letter identified multiple patent and pending applications—including U.S. Pat. Pub. No. 2013-0282017 A1, which issued as the asserted '854 patent. This letter expressly stated that Dr. Moskowitz's patent portfolio "may be of interest to NuVasive" and offered to initiate further discussions.

101.    Despite receiving this formal notice, NuVasive never engaged in licensing discussions.  Instead, it proceeded to launch spinal fusion products that embodied the same technologies that Moskowitz had disclosed years earlier—technology NuVasive had repeatedly expressed interest in but refused to license.  The technologies described in the '854 patent are embodied in at least NuVasive's Brigade and CoRoent systems.  NuVasive continued to develop and commercialize these product families through the damages period beginning in 2019.  The continuity in product line and technology, coupled with NuVasive's contemporaneous internal citations to the '854 patent, support a plausible inference of knowledge of infringement.

102.    NuVasive's awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2011 through its active engagement with Dr. Moskowitz, during which NuVasive sought and received technical information, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's intellectual property.  By 2015, after years of meetings and detailed disclosures, Dr. Moskowitz formally placed NuVasive on notice of his patent rights through written correspondence from legal counsel.  The letter sent to NuVasive explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the publication number, filing date, issue date, and title of each.  United States Pat. Pub. No. 2013-0282017 A1, which issued as the asserted '854 patent, was identified in the 2015 letter.

103.    On information and belief, NuVasive patent prosecution activities further confirm that it has been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '854 patent.  On information and belief, NuVasive has continued to monitor Moskowitz Family LLC's patent portfolio since becoming aware of it by no later than 2015.  For example,  NuVasive has disclosed the '854 patent, as well as related Moskowitz patents, to the

Patent Office in Information Disclosure Statements submitted during prosecution of its own

patent applications—starting as early as August 2017.

104.    On information and belief, NuVasive has known that making and/or using its '854

Accused Instrumentalities constitutes an act of direct infringement of the '854 patent since at

least shortly after the issuance of the '854 patent in April 2016.  NuVasive was further aware of

its infringement as of at least August 2017, when it first cited the '854 patent during prosecution

of its own patents, and received additional notice through the filing and service of this

Complaint, as demonstrated by the attached claim charts.  To the extent NuVasive lacked actual

knowledge of its infringement, such lack of knowledge resulted from its deliberate decision to

avoid learning these facts.  NuVasive, therefore, knew or was willfully blind to the fact that

making and/or using the '854 Accused Instrumentalities by hospitals, surgeons, medical

professionals, distributors, manufacturers, and independent sales representatives directly

infringes the '854 patent.

105.    On information and belief, NuVasive has indirectly infringed and continues to

indirectly infringe the '854 patent under 35 U.S.C. § 271(c) because it has contributed to direct

infringement, and continues to contribute to direct infringement, by third parties (including

hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales

representatives) of at least claim 1 of the '854 patent.  For example, NuVasive has sold, offered

for sale, and/or imported into the United States and is currently selling, offering for sale, and/or

importing into the United States components of the '854 Accused Instrumentalities (such as

intervertebral cages and tools for inserting the intervertebral cages) to these third parties with full

knowledge of the '854 patent.  These third parties have assembled the components to make and

use the '854 Accused Instrumentalities according to instructions, manuals, brochures,

documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to assemble and use the components of the '854 Accused Instrumentalities in ways that infringed/infringe the '854 patent. NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Further, NuVasive's components constituted/constitute a material part of the inventions claimed in the '854 patent. NuVasive supplied/supplies these components with knowledge of the '854 patent and knowledge that the components were/are especially made for use in an infringing manner.

106.    On information and belief, NuVasive has also indirectly infringed and continue to indirectly infringe the '854 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '854 Accused Instrumentalities (such as intervertebral cages and tools for inserting the intervertebral cages) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 1 of the '854 patent if such combination occurred within the United States. For example, NuVasive has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '854 Accused Instrumentalities with full knowledge of the '854 patent. These third parties have made or used the '854 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '854 Accused Instrumentalities and use them in ways that would infringe the '854 patent if such combination occurred within the United States. NuVasive provides these instructions to the third parties with

the knowledge that assembly and usage in accordance with its instructions would infringe the

'854 patent if such assembly and usage took place in the United States.  Additionally,

NuVasive's components are especially made and/or especially adapted for use in an infringing

manner and NuVasive's components were and are not staple articles or commodities of

commerce suitable for substantial noninfringing uses.

107.    On information and belief, NuVasive's actions demonstrate an intent not only to

cause the acts described herein that form the basis of direct infringement by third parties (or

would form the basis of direct infringement if they occurred within the United States), but also to

cause these acts with the specific intent to infringe the '854 patent.  At a minimum, NuVasive's

conduct demonstrates that NuVasive either knew or should have known that the acts of such

third parties directly infringed/infringe the '854 patent (or would infringe if those acts occurred

within the United States).

108.    NuVasive's infringement of the '854 patent has been and continues to be willful

and merits enhanced damages under 35 U.S.C. § 284.  NuVasive had actual knowledge of the

patent shortly after its issuance, and alternatively was willfully blind to its existence and

relevance.  On information and belief, NuVasive's internal IP team reviewed the '854 patent

during prosecution of closely related spinal fusion patents.  NuVasive cited the '854 patent,

received direct notice of the publication that became the '854 patent and its family in 2015, and,

on information and belief, monitored spine-related patent portfolios, including that of Moskowitz

Family LLC.

109.    Despite this knowledge, NuVasive continued to manufacture, market, and sell the

accused spinal implant systems.  NuVasive did not seek a license from Moskowitz Family LLC,

did not redesign the relevant features, and did not assert any non-infringement or invalidity

positions.  Nor did NuVasive take any steps to resolve its infringement risk or seek clarification from Dr. Moskowitz.  These facts, in conjunction with NuVasive's failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

110.    NuVasive's ongoing commercialization of the '854 Accused Instrumentalities—despite notice and without asserting any good-faith basis for believing the '854 patent was invalid or not infringed—demonstrates egregious disregard for Moskowitz Family LLC's patent rights and supports an award of enhanced damages.

111.    Moskowitz Family LLC has been damaged as a result of NuVasive's willful infringement.

112.    On information and belief, NuVasive will continue to infringe one or more claims of the '854 patent unless and until it is enjoined by this Court.

113.    On information and belief, NuVasive has caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '854 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until NuVasive are enjoined from infringing the claims of the '854 patent.

## COUNT IV

### (Infringement of the '940 Patent)

114.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

115.    On information and belief, NuVasive has directly infringed and continues to directly infringe one or more claims of the '940 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or

imported and is currently making, using, selling, offering for sale, and/or importing the '940 Accused Instrumentalities. NuVasive's '940 Accused Instrumentalities include, but are not limited to, the X-Core systems and instrumentation, and any other NuVasive product, either alone or in combination, that operates in a reasonably similar manner.

116.    Attached to this Complaint as Exhibit D2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 22 of the '940 patent are met by the '940 Accused Instrumentalities.

117.    NuVasive's infringement of the '940 patent has also been indirect.

118.    On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe one or more claims of the '940 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '940 Accused Instrumentalities. Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '940 patent.

119.    For example, NuVasive has supplied, and continues to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '940 Accused Instrumentalities, with knowledge that making and/or using the '940 Accused Instrumentalities in accordance with its instructions directly infringed/infringes at least claim 22 of the '940 patent, or with willful blindness to that fact. On information and belief, NuVasive will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use its '940 Accused

Instrumentalities in ways that directly infringe the '940 patent, and NuVasive has encouraged

and will continue to encourage these acts with the specific intent to infringe the '940 patent.

Further, NuVasive provides information and technical support to hospitals, surgeons, medical

professionals, distributors, manufacturers, and independent sales representatives, including

manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and

promotional materials, encouraging them to make, purchase, and/or use NuVasive's '940

Accused Instrumentalities with knowledge that such making and/or use constitutes an act of

direct infringement of the '940 patent.  Alternatively, NuVasive has acted with willful blindness

to these facts.  On information and belief, NuVasive knows that there is a high probability that

the making and/or use of NuVasive's '940 Accused Instrumentalities constitutes direct

infringement of the '940 patent but took deliberate actions to avoid learning of these facts.

120.    On information and belief, NuVasive's inducement of third parties occurred after

it had actual knowledge of, or was willfully blind to, the '940 patent.  The timing of its conduct

and the nature of its continued support to third parties demonstrate specific intent to cause

infringement.

121.    On information and belief, NuVasive had actual knowledge of the inventions

described and claimed in the '940 patent since at least shortly after its issuance in March 2018, as

described in Paragraphs above and below.

122.    Alternatively, to the extent actual knowledge is disputed, NuVasive was willfully

blind to the existence and relevance of the '940 patent.  Despite receiving notice of

Dr. Moskowitz's patent portfolio, including the patent publication that became the '940 patent,

from Dr. Moskowitz's counsel in June 2015, NuVasive failed to conduct any known non-

infringement or clearance analysis, ignored Dr. Moskowitz's invitation for licensing discussions,

and proceeded to commercialize spinal implants embodying the technologies claimed in the '940

patent. As further detailed above and below, NuVasive's deliberate avoidance of confirming

infringement, despite USPTO citations to family members and industry publications (such as, for

example, SpineMarket's publications) repeatedly referencing the '940 patent, supports a strong

inference of willful blindness.

123.    For example, NuVasive has been aware of the specific inventions described and

claimed in the '940 patent since before the patent issued in March 2018. Between 2010 and

2011, and again in 2015, NuVasive received technical information from Dr. Moskowitz about

pending and issued patents in his portfolio. Dr. Moskowitz's 2015 notice letter identified

multiple patent and pending applications—including U.S. Pat. Pub. No. 2011-0208312 A1,

which issued as the asserted '940 patent. This letter expressly stated that Dr. Moskowitz's patent

portfolio "may be of interest to NuVasive" and offered to initiate further discussions.

124.    Despite receiving this formal notice, NuVasive never engaged in licensing

discussions. Instead, it proceeded to launch spinal fusion products that embodied the same

technologies that Moskowitz had disclosed years earlier. The technologies described in the '940

patent are embodied in at least NuVasive's X-Core systems. NuVasive continued to develop and

commercialize these product families through the damages period beginning in 2019. The

continuity in product line and technology, coupled with NuVasive's contemporaneous awareness

of the technology covered and claimed by the '940 patent, support a plausible inference of

knowledge of infringement.

125.    NuVasive's awareness of Moskowitz Family LLC's patent portfolio was further

reinforced between 2010 and 2011 through its active engagement with Dr. Moskowitz, during

which NuVasive sought and received demonstrations and prototypes, reviewed patent claims,

requested additional technical details, and expressed interest in Dr. Moskowitz's intellectual property.  By 2015, after years of meetings and detailed disclosures, Dr. Moskowitz formally placed NuVasive on notice of his patent rights through written correspondence from legal counsel.  The letter sent to NuVasive explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the publication number, filing date, issue date, and title of each.  United States Pat. Pub. No. 2011-0208312 A1, which issued as the asserted '940 patent, was identified in the 2015 letter.

126.    On information and belief, NuVasive patent prosecution activities further confirm that it has been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '940 patent.  On information and belief, NuVasive has continued to monitor Moskowitz Family LLC's patent portfolio since becoming aware of it by no later than 2015.  For example,  NuVasive has cited and encountered family members of the '940 patent during prosecution of its own patent applications—starting as early as June 2017.  For example, a USPTO examiner cited Dr. Moskowitz's U.S. Pat. No. 7,942,903, which is a parent of the '940 patent, in connection with the Notice of Allowance during prosecution of NuVasive's own patent application.

127.    On information and belief, NuVasive has known that making and/or using its '940 Accused Instrumentalities constitutes an act of direct infringement of the '940 patent since at least shortly after the issuance of the '940 patent in March 2018, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim chart.  To the extent NuVasive lacked actual knowledge of its infringement, such lack of knowledge resulted from its deliberate decision to avoid learning these facts.  NuVasive, therefore, knew or was willfully blind to the fact that making and/or using the '940 Accused Instrumentalities by

hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '940 patent.

128.    On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe the '940 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) of at least claim 22 of the '940 patent.  For example, NuVasive has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '940 Accused Instrumentalities (such as shells and expansion mechanisms) to these third parties with full knowledge of the '940 patent.  These third parties have assembled the components to make and use the '940 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to assemble and use the components of the '940 Accused Instrumentalities in ways that infringed/infringe the '940 patent.  NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, NuVasive's components constituted/constitute a material part of the inventions claimed in the '940 patent.  NuVasive supplied/supplies these components with knowledge of the '940 patent and knowledge that the components were/are especially made for use in an infringing manner.

129.    On information and belief, NuVasive has also indirectly infringed and continue to indirectly infringe the '940 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '940 Accused Instrumentalities (such as shells and

expansion mechanisms) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 22 of the '940 patent if such combination occurred within the United States. For example, NuVasive has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '940 Accused Instrumentalities with full knowledge of the '940 patent. These third parties have made or used the '940 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '940 Accused Instrumentalities and use them in ways that would infringe the '940 patent if such combination occurred within the United States. NuVasive provides these instructions to the third parties with the knowledge that assembly and usage in accordance with its instructions would infringe the '940 patent if such assembly and usage took place in the United States. Additionally, NuVasive's components are especially made and/or especially adapted for use in an infringing manner and NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

130. On information and belief, NuVasive's actions demonstrate an intent not only to cause the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also to cause these acts with the specific intent to infringe the '940 patent. At a minimum, NuVasive's conduct demonstrates that NuVasive either knew or should have known that the acts of such

third parties directly infringed/infringe the '940 patent (or would infringe if those acts occurred within the United States).

131.     NuVasive's infringement of the '940 patent has been and continues to be willful and merits enhanced damages under 35 U.S.C. § 284.  NuVasive had actual knowledge of the patent shortly after its issuance and cited related family members repeatedly in its own patent filings.  Alternatively, NuVasive was willfully blind to the existence and relevance of the '940 patent.  NuVasive received direct notice of the publication that became the '940 patent and its family in 2015, and, on information and belief, monitored spine-related patent portfolios, including that of Moskowitz Family LLC.

132.     Despite this knowledge, NuVasive continued to manufacture, market, and sell the '940 Accused Instrumentalities.  NuVasive did not seek a license from Moskowitz Family LLC, did not redesign the relevant features, and did not assert any non-infringement or invalidity positions.  Nor did NuVasive take any steps to resolve its infringement risk or seek clarification from Dr. Moskowitz.  These facts, in conjunction with NuVasive's failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

133.     NuVasive's ongoing commercialization of the '940 Accused Instrumentalities— despite actual knowledge or deliberate indifference—demonstrates egregious disregard for Moskowitz Family LLC's patent rights and supports an award of enhanced damages.

134.     Moskowitz Family LLC has been damaged as a result of NuVasive's willful infringement.

135.     On information and belief, NuVasive will continue to infringe one or more claims of the '940 patent unless and until it is enjoined by this Court.

136.    On information and belief, NuVasive has caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '940 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until NuVasive are enjoined from infringing the claims of the '940 patent.

## COUNT V

### (Infringement of the '284 Patent)

137.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

138.    On information and belief, NuVasive has directly infringed and continues to directly infringe one or more claims of the '284 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing the '284 Accused Instrumentalities.  NuVasive's '284 Accused Instrumentalities include, but are not limited to, the TLX systems and instrumentation, and any other NuVasive product, either alone or in combination, that operates in a reasonably similar manner.

139.    Attached to this Complaint as Exhibit E2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '284 patent are met by the '284 Accused Instrumentalities.

140.    NuVasive's infringement of the '284 patent has also been indirect.

141.    On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe one or more claims of the '284 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use,

sell, offer to sell, and/or import the '284 Accused Instrumentalities. Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '284 patent.

142.    For example, NuVasive has supplied, and continues to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '284 Accused Instrumentalities, with knowledge that making and/or using the '284 Accused Instrumentalities in accordance with its instructions directly infringed/infringes at least claim 1 of the '284 patent, or with willful blindness to that fact. On information and belief, NuVasive will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use its '284 Accused Instrumentalities in ways that directly infringe the '284 patent, and NuVasive has encouraged and will continue to encourage these acts with the specific intent to infringe the '284 patent. Further, NuVasive provides information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and/or use NuVasive's '284 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '284 patent. Alternatively, NuVasive has acted with willful blindness to these facts. On information and belief, NuVasive knows that there is a high probability that the making and/or use of NuVasive's '284 Accused Instrumentalities constitutes direct infringement of the '284 patent but took deliberate actions to avoid learning of these facts.

143.     On information and belief, NuVasive's inducement of third parties occurred after it had actual knowledge of, or was willfully blind to, the '284 patent.  The timing of its conduct and the nature of its continued support to third parties demonstrate specific intent to cause infringement.

144.     On information and belief, NuVasive had actual knowledge of the inventions described and claimed in the '284 patent since at least shortly after its issuance in July 2018, as described in Paragraphs above and below.

145.     Alternatively, to the extent actual knowledge is disputed, NuVasive was willfully blind to the existence and relevance of the '284 patent.  Despite receiving notice of Dr. Moskowitz's patent portfolio, including patents and/or publications that led to the '284 patent, from Dr. Moskowitz's counsel in June 2015, NuVasive failed to conduct any known non-infringement or clearance analysis, ignored Dr. Moskowitz's invitation for licensing discussions, and proceeded to commercialize spinal implants embodying the technologies claimed in the '284 patent.  As further detailed above and below, NuVasive's deliberate avoidance of confirming infringement, despite USPTO citations to family members and industry publications (such as, for example, SpineMarket's publications) repeatedly referencing the '284 patent, supports a strong inference of willful blindness.

146.     For example, NuVasive has been aware of the specific inventions described and claimed in the '284 patent since before the patent issued in July 2018.  Between 2010 and 2011, and again in 2015, NuVasive received technical information about pending and issued patents in his portfolio.  Dr. Moskowitz's 2015 notice letter identified multiple patents and pending applications—including patents and/or applications that led to the '284 patent.  The '284 patent

is a continuation of these patents and/or applications and contains the same figures and technical subject matter disclosed to NuVasive in 2015.

147.    Despite receiving this formal notice, NuVasive never engaged in licensing discussions.  Instead, it proceeded to launch spinal fusion products that embodied the same technologies that Moskowitz had disclosed years earlier.  The technologies described in the '284 patent are embodied in at least NuVasive's TLX systems. NuVasive continued to develop and commercialize these product families through the damages period beginning in 2019.  The continuity in product line and technology, coupled with NuVasive's contemporaneous awareness of the technology covered and claimed by the '284 patent, support a plausible inference of knowledge of infringement.

148.    NuVasive's awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2011 through its active engagement with Dr. Moskowitz, during which NuVasive sought and received demonstrations and prototypes, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's intellectual property.  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed NuVasive on notice of his patent rights through written correspondence from legal counsel.  The letter sent to NuVasive explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the publication number, filing date, issue date, and title of each.  The asserted '284 patent is a continuation of the patents and pending applications identified in the 2015 letter—and shares the same technical description and figures as those patents and pending applications disclosed to NuVasive.

149.    On information and belief, NuVasive patent prosecution activities further confirm that it has been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '284 patent.  On information and belief, NuVasive has continued to monitor Moskowitz Family LLC's patent portfolio since becoming aware of it by no later than 2015.  For example,  NuVasive has cited and encountered family members of the '284 patent during prosecution of its own patent applications—starting as early as June 2017.  For example, a USPTO examiner cited Dr. Moskowitz's U.S. Pat. No. 7,942,903, which is a parent of the '284 patent, in connection with the Notice of Allowance during prosecution of NuVasive's own patent application.

150.    On information and belief, NuVasive has known that making and/or using its '284 Accused Instrumentalities constitutes an act of direct infringement of the '284 patent since at least shortly after the issuance of the '284 patent in July 2018, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim chart.  To the extent NuVasive lacked actual knowledge of its infringement, such lack of knowledge resulted from its deliberate decision to avoid learning these facts.  NuVasive, therefore, knew or was willfully blind to the fact that making and/or using the '284 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '284 patent.

151.    NuVasive's infringement of the '284 patent has been and continues to be willful and merits enhanced damages under 35 U.S.C. § 284.  NuVasive had actual knowledge of the patent shortly after its issuance and cited related family members repeatedly in its own patent filings.  Alternatively, NuVasive was willfully blind to the existence and relevance of the '284 patent.  NuVasive received direct notice of the '284 patent's parent patents and applications in

2015 and, on information and belief, was repeatedly exposed to Dr. Moskowitz's innovations through patent monitoring efforts and public industry reports.

152.    Despite this knowledge, NuVasive continued to manufacture, market, and sell the '284 Accused Instrumentalities.  NuVasive did not seek a license from Moskowitz Family LLC, did not redesign the relevant features, and did not assert any non-infringement or invalidity positions.  Nor did NuVasive take any steps to resolve its infringement risk or seek clarification from Dr. Moskowitz.  These facts, in conjunction with NuVasive's failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

153.    NuVasive's ongoing commercialization of the '284 Accused Instrumentalities—despite actual knowledge or deliberate indifference—demonstrates egregious disregard for Moskowitz Family LLC's patent rights and supports an award of enhanced damages.

154.    Moskowitz Family LLC has been damaged as a result of NuVasive's willful infringement.

155.    On information and belief, NuVasive will continue to infringe one or more claims of the '284 patent unless and until it is enjoined by this Court.

156.    On information and belief, NuVasive have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '284 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until NuVasive are enjoined from infringing the claims of the '284 patent.

## COUNT VI

### (Infringement of the '633 Patent)

157.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

158.    On information and belief, NuVasive has directly infringed and continues to directly infringe one or more claims of the '633 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing the '633 Accused Instrumentalities.  NuVasive's '633 Accused Instrumentalities include, but are not limited to, the TLX systems and instrumentation, and any other NuVasive product, either alone or in combination, that operates in a reasonably similar manner.

159.    Attached to this Complaint as Exhibit F2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '633 patent are met by the '633 Accused Instrumentalities.

160.    NuVasive's infringement of the '633 patent has also been indirect.

161.    On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe one or more claims of the '633 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '633 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '633 patent.

162.    For example, NuVasive has supplied, and continues to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials,

videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '633 Accused Instrumentalities, with knowledge that making and/or using the '633 Accused Instrumentalities in accordance with its instructions directly infringed/infringes at least claim 1 of the '633 patent, or with willful blindness to that fact. On information and belief, NuVasive will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use its '633 Accused Instrumentalities in ways that directly infringe the '633 patent, and NuVasive has encouraged and will continue to encourage these acts with the specific intent to infringe the '633 patent. Further, NuVasive provides information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and/or use NuVasive's '633 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '633 patent. Alternatively, NuVasive has acted with willful blindness to these facts. On information and belief, NuVasive knows that there is a high probability that the making and/or use of NuVasive's '633 Accused Instrumentalities constitutes direct infringement of the '633 patent but took deliberate actions to avoid learning of these facts.

163.    On information and belief, NuVasive's inducement of third parties occurred after it had actual knowledge of, or was willfully blind to, the '633 patent. The timing of its conduct and the nature of its continued support to third parties demonstrate specific intent to cause infringement.

164.    On information and belief, NuVasive had actual knowledge of the inventions described and claimed in the '633 patent since at least shortly after its issuance in October 2019, as described in Paragraphs above and below.

165.    Alternatively, to the extent actual knowledge is disputed, NuVasive was willfully blind to the existence and relevance of the '633 patent. Despite receiving notice of Dr. Moskowitz's patent portfolio, including patents and/or publications that led to the '633 patent, from Dr. Moskowitz's counsel in June 2015, NuVasive failed to conduct any known non-infringement or clearance analysis, ignored Dr. Moskowitz's invitation for licensing discussions, and proceeded to commercialize spinal implants embodying the technologies claimed in the '633 patent. As further detailed above and below, NuVasive's deliberate avoidance of confirming infringement, despite USPTO citations to family members and industry publications (such as, for example, SpineMarket's publications) repeatedly referencing the '633 patent, supports a strong inference of willful blindness.

166.    For example, NuVasive has been aware of the specific inventions described and claimed in the '633 patent since before the patent issued in October 2019. Between 2010 and 2011, and again in 2015, NuVasive received technical information from Dr. Moskowitz about pending and issued patents in his portfolio. Dr. Moskowitz's 2015 notice letter identified multiple patents and pending applications—including patents and/or applications that led to the '633 patent. The '633 patent is a continuation of these patents and/or applications and contains the same figures and technical subject matter disclosed to NuVasive in 2015.

167.    Despite receiving this formal notice, NuVasive never engaged in licensing discussions. Instead, it proceeded to launch spinal fusion products that embodied the same technologies that Moskowitz had disclosed years earlier—technology NuVasive had repeatedly

expressed interest in but refused to license. The technologies described in the '633 patent are embodied in at least NuVasive's TLX systems. NuVasive continued to develop and commercialize these product families through the damages period beginning in 2019. The continuity in product line and technology, coupled with NuVasive's contemporaneous awareness of the technology covered and claimed by the '633 patent, support a plausible inference of knowledge of infringement.

168.    NuVasive's awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2011 through its active engagement with Dr. Moskowitz, during which NuVasive sought and received demonstrations and prototypes, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's intellectual property. By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed NuVasive on notice of his patent rights through written correspondence from legal counsel. The letter sent to NuVasive explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the publication number, filing date, issue date, and title of each. The asserted '633 patent is a continuation of the patents and pending applications identified in the 2015 letter—and shares the same technical description and figures as those patents and pending applications disclosed to NuVasive.

169.    On information and belief, NuVasive patent prosecution activities further confirm that it has been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '633 patent. On information and belief, NuVasive has continued to monitor Moskowitz Family LLC's patent portfolio since becoming aware of it by no later than 2015. For example, NuVasive has cited and encountered family members of the '633 patent during

prosecution of its own patent applications—starting as early as June 2017.  For example, a USPTO examiner cited Dr. Moskowitz's U.S. Pat. No. 7,942,903, which is a parent of the '633 patent, in connection with the Notice of Allowance during prosecution of NuVasive's own patent application.

170.    On information and belief, NuVasive has known that making and/or using its '633 Accused Instrumentalities constitutes an act of direct infringement of the '633 patent since at least shortly after the issuance of the '633 patent in October 2019, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim chart.  To the extent NuVasive lacked actual knowledge of its infringement, such lack of knowledge resulted from its deliberate decision to avoid learning these facts.  NuVasive, therefore, knew or was willfully blind to the fact that making and/or using the '633 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '633 patent.

171.    NuVasive's infringement of the '633 patent has been and continues to be willful and merits enhanced damages under 35 U.S.C. § 284.  NuVasive had actual knowledge of the patent shortly after its issuance and cited related family members in its own patent filings.  Alternatively, NuVasive was willfully blind to the existence and relevance of the '633 patent.  NuVasive received direct notice of the '633 patent's parent patents and/or applications in 2015 and, on information and belief, was repeatedly exposed to Dr. Moskowitz's innovations through patent monitoring efforts and public industry reports.

172.    Despite this knowledge, NuVasive continued to manufacture, market, and sell the '633 Accused Instrumentalities.  NuVasive did not seek a license from Moskowitz Family LLC, did not redesign the relevant features, and did not assert any non-infringement or invalidity

positions.  Nor did NuVasive take any steps to resolve its infringement risk or seek clarification from Dr. Moskowitz.  These facts, in conjunction with NuVasive's failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

173.    NuVasive's ongoing commercialization of the '633 Accused Instrumentalities—despite actual knowledge or deliberate indifference—demonstrates egregious disregard for Moskowitz Family LLC's patent rights and supports an award of enhanced damages.

174.    Moskowitz Family LLC has been damaged as a result of NuVasive's willful infringement.

175.    On information and belief, NuVasive will continue to infringe one or more claims of the '633 patent unless and until it is enjoined by this Court.

176.    On information and belief, NuVasive has caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '633 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until NuVasive is enjoined from infringing the claims of the '633 patent.

<u>COUNT VII</u>

**(Infringement of the '753 Patent)**

177.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

178.    On information and belief, NuVasive has directly infringed and continues to directly infringe one or more claims of the '753 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing the

'753 Accused Instrumentalities.  NuVasive's '753 Accused Instrumentalities include, but are not

limited to, the Base and CoRoent systems and instrumentation, and any other NuVasive product,

either alone or in combination, that operates in a reasonably similar manner.

179.    Attached to this Complaint as Exhibit G2 and G3 are representative charts that, on

information and belief, describe how, as a non-limiting example, the elements of exemplary

claim 31 of the '753 patent are met by the '753 Accused Instrumentalities.

180.    NuVasive's infringement of the '753 patent has also been indirect.

181.    On information and belief, NuVasive has indirectly infringed and continues to

indirectly infringe one or more claims of the '753 patent under 35 U.S.C. § 271(b) because it has

induced, and continues to induce, third parties (including hospitals, surgeons, medical

professionals, distributors, manufacturers, and independent sales representatives) to make, use,

sell, offer to sell, and/or import the '753 Accused Instrumentalities.  Such making, using, selling,

offering for sale, and/or importing by third parties constitutes direct infringement of one or more

claims of the '753 patent.

182.    For example, NuVasive has supplied, and continues to supply, such induced third

parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials,

videos, mobile applications, website materials, promotional materials, and the like that

instructed/instructs them how to make and/or use the '753 Accused Instrumentalities, with

knowledge that making and/or using the '753 Accused Instrumentalities in accordance with its

instructions directly infringed/infringes at least claim 31 of the '753 patent, or with willful

blindness to that fact.  On information and belief, NuVasive will continue to encourage, aid, or

otherwise cause these third parties to, for example, make and/or use its '753 Accused

Instrumentalities in ways that directly infringe the '753 patent, and NuVasive has encouraged

and will continue to encourage these acts with the specific intent to infringe the '753 patent. Further, NuVasive provides information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and/or use NuVasive's '753 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '753 patent. Alternatively, NuVasive has acted with willful blindness to these facts. On information and belief, NuVasive knows that there is a high probability that the making and/or use of NuVasive's '753 Accused Instrumentalities constitutes direct infringement of the '753 patent but took deliberate actions to avoid learning of these facts.

183.    On information and belief, NuVasive's inducement of third parties occurred after it had actual knowledge of, or was willfully blind to, the '753 patent. The timing of its conduct and the nature of its continued support to third parties demonstrate specific intent to cause infringement.

184.    On information and belief, NuVasive had actual knowledge of the inventions described and claimed in the '753 patent since at least shortly after its issuance in February 2021, as described in Paragraphs above and below.

185.    Alternatively, to the extent actual knowledge is disputed, NuVasive was willfully blind to the existence and relevance of the '753 patent. Despite receiving notice of Dr. Moskowitz's patent portfolio, including patents and/or publications that led to the '753 patent, from Dr. Moskowitz's counsel in June 2015, NuVasive failed to conduct any known non-infringement or clearance analysis, ignored Dr. Moskowitz's invitation for licensing discussions, and proceeded to commercialize spinal implants embodying the technologies claimed in the '753

patent.  As further detailed above, NuVasive's deliberate avoidance of confirming infringement, despite USPTO citations to family members and industry publications (such as, for example, SpineMarket's publications) repeatedly referencing the '753 patent, supports a strong inference of willful blindness.

186.    For example, NuVasive has been aware of the specific inventions described and claimed in the '753 patent since before the patent issued in February 2021.  Between 2010 and 2011, and again in 2015, NuVasive received technical information from Dr. Moskowitz detailing technologies that were ultimately claimed in the '753 patent.  Dr. Moskowitz's 2015 notice letter identified multiple patents and pending applications—including patents and/or applications that led to the '753 patent.  The '753 patent is a continuation of these applications and contains the same figures and technical subject matter disclosed to NuVasive in 2015.

187.    Despite receiving this formal notice, NuVasive never engaged in licensing discussions.  Instead, it proceeded to launch spinal fusion products that embodied the same technologies that Moskowitz had disclosed years earlier—technology NuVasive had repeatedly expressed interest in but refused to license.  The technologies described in the '753 patent are embodied in at least NuVasive's Base and CoRoent systems.  NuVasive continued to develop and commercialize these product families through the damages period beginning in 2019.  The continuity in product line and technology, coupled with NuVasive's contemporaneous awareness of the technology covered and claimed by the '753 patent, support a plausible inference of knowledge of infringement.

188.    NuVasive's awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2011 through its active engagement with Dr. Moskowitz, during which NuVasive sought and received technical information, reviewed patent claims, requested

additional technical details, and expressed interest in Dr. Moskowitz's intellectual property.  By 2015, after years of meetings and detailed disclosures, Dr. Moskowitz formally placed NuVasive on notice of his patent rights through written correspondence from legal counsel.  The letter sent to NuVasive explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the publication number, filing date, issue date, and title of each.  The asserted '753 patent is a continuation of the patents and pending applications identified in the 2015 letter—and shares the same technical description and figures as those patents and pending applications disclosed to NuVasive.

189.    On information and belief, NuVasive patent prosecution activities further confirm that it has been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '753 patent.  On information and belief, NuVasive has continued to monitor Moskowitz Family LLC's patent portfolio since becoming aware of it by no later than 2015.  For example,  NuVasive has cited and encountered family members of the '753 patent during prosecution of its own patent applications—starting as early as June 2017.  For example, a USPTO examiner cited Dr. Moskowitz's U.S. Pat. No. 7,942,903, which is a parent of the '753 patent, in connection with the Notice of Allowance during prosecution of NuVasive's own patent application.

190.    On information and belief, NuVasive has known that making and/or using its '753 Accused Instrumentalities constitutes an act of direct infringement of the '753 patent since at least shortly after the issuance of the '753 patent in February 2021, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent NuVasive lacked actual knowledge of its infringement, such lack of knowledge resulted from its deliberate decision to avoid learning these facts.  NuVasive,

therefore, knew or was willfully blind to the fact that making and/or using the '753 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '753 patent.

191.    On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe the '753 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) of at least claim 31 of the '753 patent.  For example, NuVasive has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '753 Accused Instrumentalities (such as intervertebral spacers) to these third parties with full knowledge of the '753 patent.  These third parties have assembled the components to make and use the '753 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to assemble and use the components of the '753 Accused Instrumentalities in ways that infringed/infringe the '753 patent.  NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, NuVasive's components constituted/constitute a material part of the inventions claimed in the '753 patent. NuVasive supplied/supplies these components with knowledge of the '753 patent and knowledge that the components were/are especially made for use in an infringing manner.

192.    On information and belief, NuVasive has also indirectly infringed and continues to indirectly infringe the '753 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '753 Accused Instrumentalities (such as

intervertebral spacers) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 31 of the '753 patent if such combination occurred within the United States. For example, NuVasive has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '753 Accused Instrumentalities with full knowledge of the '753 patent. These third parties have made or used the '753 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '753 Accused Instrumentalities and use them in ways that would infringe the '753 patent if such combination occurred within the United States. NuVasive provides these instructions to the third parties with the knowledge that assembly and usage in accordance with its instructions would infringe the '753 patent if such assembly and usage took place in the United States. Additionally, NuVasive's components are especially made and/or especially adapted for use in an infringing manner and NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

193.    On information and belief, NuVasive's actions demonstrate an intent not only to cause the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also to cause these acts with the specific intent to infringe the '753 patent. At a minimum, NuVasive's conduct demonstrates that NuVasive either knew or should have known that the acts of such

third parties directly infringed/infringe the '753 patent (or would infringe if those acts occurred within the United States).

194.    NuVasive's infringement of the '753 patent has been and continues to be willful and merits enhanced damages under 35 U.S.C. § 284.  NuVasive had actual knowledge of the patent shortly after its issuance and cited related family members repeatedly in its own patent filings.  Alternatively, NuVasive was willfully blind to the existence and relevance of the '753 patent.  NuVasive received direct notice of the '753 patent's parent patents and/or applications in 2015 and, on information and belief, was repeatedly exposed to Dr. Moskowitz's innovations through patent monitoring efforts and public industry reports.

195.    Despite this knowledge, NuVasive continued to manufacture, market, and sell the '753 Accused Instrumentalities.  NuVasive did not seek a license from Moskowitz Family LLC, did not redesign the relevant features, and did not assert any non-infringement or invalidity positions.  Nor did NuVasive take any steps to resolve its infringement risk or seek clarification from Dr. Moskowitz.  These facts, in conjunction with NuVasive's failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

196.    NuVasive's ongoing commercialization of the '753 Accused Instrumentalities—despite actual knowledge or deliberate indifference—demonstrates egregious disregard for Moskowitz Family LLC's patent rights and supports an award of enhanced damages.

197.    Moskowitz Family LLC has been damaged as a result of NuVasive's willful infringement.

198.    On information and belief, NuVasive will continue to infringe one or more claims of the '753 patent unless and until it is enjoined by this Court.

199.    On information and belief, NuVasive has caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '753 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until NuVasive is enjoined from infringing the claims of the '753 patent.

**COUNT VIII**

**(Infringement of the '136 Patent)**

200.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

201.    On information and belief, NuVasive has directly infringed and continues to directly infringe one or more claims of the '136 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing the '136 Accused Instrumentalities.  NuVasive's '136 Accused Instrumentalities include, but are not limited to, the TLX and Mod-Ex PL systems and instrumentation, and any other NuVasive product, either alone or in combination, that operates in a reasonably similar manner.

202.    Attached to this Complaint as Exhibits H2 and H3 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claim 1 of the '136 patent are met by the '136 Accused Instrumentalities.

203.    NuVasive's infringement of the '136 patent has also been indirect.

204.    On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe one or more claims of the '136 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use,

sell, offer to sell, and/or import the '136 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '136 patent.

205.    For example, NuVasive has supplied, and continues to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '136 Accused Instrumentalities, with knowledge that making and/or using the '136 Accused Instrumentalities in accordance with its instructions directly infringed/infringes at least claim 1 of the '136 patent, or with willful blindness to that fact.  On information and belief, NuVasive will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use its '136 Accused Instrumentalities in ways that directly infringe the '136 patent, and NuVasive has encouraged and will continue to encourage these acts with the specific intent to infringe the '136 patent.  Further, NuVasive provides information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and/or use NuVasive's '136 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '136 patent.  Alternatively, NuVasive has acted with willful blindness to these facts.  On information and belief, NuVasive knows that there is a high probability that the making and/or use of NuVasive's '136 Accused Instrumentalities constitutes direct infringement of the '136 patent but took deliberate actions to avoid learning of these facts.

206.    On information and belief, NuVasive's inducement of third parties occurred after it had actual knowledge of, or was willfully blind to, the '136 patent.  The timing of its conduct and the nature of its continued support to third parties demonstrate specific intent to cause infringement.

207.    On information and belief, NuVasive had actual knowledge of the inventions described and claimed in the '136 patent since at least shortly after its issuance in July 2022, as described in Paragraphs above and below.

208.    Alternatively, to the extent actual knowledge is disputed, NuVasive was willfully blind to the existence and relevance of the '136 patent.  Despite receiving notice of Dr. Moskowitz's patent portfolio, including patents and/or publications that led to the '136 patent, from Dr. Moskowitz's counsel in June 2015, NuVasive failed to conduct any known non-infringement or clearance analysis, ignored Dr. Moskowitz's invitation for licensing discussions, and proceeded to commercialize spinal implants embodying the technologies claimed in the '136 patent.  As further detailed above, NuVasive's deliberate avoidance of confirming infringement, despite USPTO citations to family members and industry publications (such as, for example, SpineMarket's publications) repeatedly referencing the '136 patent, supports a strong inference of willful blindness.

209.    For example, NuVasive has been aware of the specific inventions described and claimed in the '136 patent since before the patent issued in July 2022.  Between 2010 and 2011, and again in 2015, NuVasive received technical information from Dr. Moskowitz about pending and issued patents in his portfolio.  Dr. Moskowitz's 2015 notice letter identified multiple patents and pending applications—including patents and/or applications that led to the '136 patent.  The

'136 patent is a continuation of these patents and/or applications and contains the same figures and technical subject matter disclosed to NuVasive in 2015.

210.    Despite receiving this formal notice, NuVasive never engaged in licensing discussions.  Instead, it proceeded to launch spinal fusion products that embodied the same technologies that Moskowitz had disclosed years earlier—technology NuVasive had repeatedly expressed interest in but refused to license.  The technologies described in the '136 patent are embodied in at least NuVasive's TLX systems.  NuVasive continued to develop and commercialize these product families through the damages period beginning in 2019.  The continuity in product line and technology, coupled with NuVasive's contemporaneous awareness of the technology covered and claimed by the '136 patent, support a plausible inference of knowledge of infringement.

211.    NuVasive's awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2011 through its active engagement with Dr. Moskowitz, during which NuVasive sought and received demonstrations and prototypes, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's intellectual property.  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed NuVasive on notice of his patent rights through written correspondence from legal counsel.  The letter sent to NuVasive explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the publication number, filing date, issue date, and title of each.  The asserted '136 patent is a continuation of the patents and pending applications identified in the 2015 letter—and shares the same technical description and figures as those patents and pending applications disclosed to NuVasive.

COMPLAINT FOR PATENT INFRINGEMENT
PAGE 68

212.    On information and belief, NuVasive patent prosecution activities further confirm that it has been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '136 patent.  On information and belief, NuVasive has continued to monitor Moskowitz Family LLC's patent portfolio since becoming aware of it by no later than 2015.  For example,  NuVasive has cited and encountered family members of the '136 patent during prosecution of its own patent applications—starting as early as June 2017.  For example, a USPTO examiner cited Dr. Moskowitz's U.S. Pat. No. 7,942,903, which is a parent of the '136 patent, in connection with the Notice of Allowance during prosecution of NuVasive's own patent application.

213.    On information and belief, NuVasive has known that making and/or using its '136 Accused Instrumentalities constitutes an act of direct infringement of the '136 patent since at least shortly after the issuance of the '136 patent in July 2022, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent NuVasive lacked actual knowledge of its infringement, such lack of knowledge resulted from its deliberate decision to avoid learning these facts.  NuVasive, therefore, knew or was willfully blind to the fact that making and/or using the '136 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '136 patent.

214.    On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe the '136 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) of at least claim 1 of the '136 patent.  For example, NuVasive has sold, offered

for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '136 Accused Instrumentalities (such as expandable spinal implants and tool assemblies) to these third parties with full knowledge of the '136 patent. These third parties have assembled the components to make and use the '136 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to assemble and use the components of the '136 Accused Instrumentalities in ways that infringed/infringe the '136 patent. NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Further, NuVasive's components constituted/constitute a material part of the inventions claimed in the '136 patent. NuVasive supplied/supplies these components with knowledge of the '136 patent and knowledge that the components were/are especially made for use in an infringing manner.

215.    On information and belief, NuVasive has also indirectly infringed and continue to indirectly infringe the '136 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '136 Accused Instrumentalities (such as expandable spinal implants and tool assemblies) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 1 of the '136 patent if such combination occurred within the United States. For example, NuVasive has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '136 Accused Instrumentalities with full knowledge of the '136 patent. These third parties have made or used

the '136 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '136 Accused Instrumentalities and use them in ways that would infringe the '136 patent if such combination occurred within the United States.  NuVasive provides these instructions to the third parties with the knowledge that assembly and usage in accordance with its instructions would infringe the '136 patent if such assembly and usage took place in the United States.  Additionally, NuVasive's components are especially made and/or especially adapted for use in an infringing manner and NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

216.    On information and belief, NuVasive's actions demonstrate an intent not only to cause the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also to cause these acts with the specific intent to infringe the '136 patent.  At a minimum, NuVasive's conduct demonstrates that NuVasive either knew or should have known that the acts of such third parties directly infringed/infringe the '136 patent (or would infringe if those acts occurred within the United States).

217.    NuVasive's infringement of the '136 patent has been and continues to be willful and merits enhanced damages under 35 U.S.C. § 284.  NuVasive had actual knowledge of the patent shortly after its issuance and cited related family members repeatedly in its own patent filings.  Alternatively, NuVasive was willfully blind to the existence and relevance of the '136 patent.  NuVasive received direct notice of the '136 patent's parent patents and/or applications in

2015 and, on information and belief, was repeatedly exposed to Dr. Moskowitz's innovations through patent monitoring efforts and public industry reports.

218.    Despite this knowledge, NuVasive continued to manufacture, market, and sell the '136 Accused Instrumentalities.  NuVasive did not seek a license from Moskowitz Family LLC, did not redesign the relevant features, and did not assert any non-infringement or invalidity positions.  Nor did NuVasive take any steps to resolve its infringement risk or seek clarification from Dr. Moskowitz.  These facts, in conjunction with NuVasive's failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

219.    NuVasive's ongoing commercialization of the '136 Accused Instrumentalities— despite actual knowledge or deliberate indifference—demonstrates egregious disregard for Moskowitz Family LLC's patent rights and supports an award of enhanced damages.

220.    Moskowitz Family LLC has been damaged as a result of NuVasive's willful infringement.

221.    On information and belief, NuVasive will continue to infringe one or more claims of the '136 patent unless and until it is enjoined by this Court.

222.    On information and belief, NuVasive has caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '136 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until NuVasive is enjoined from infringing the claims of the '136 patent.

## COUNT IX

### (Infringement of the '567 Patent)

223.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

224.    On information and belief, NuVasive has directly infringed and continues to directly infringe one or more claims of the '567 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing the '567 Accused Instrumentalities.  NuVasive's '567 Accused Instrumentalities include, but are not limited to, the Simplify systems and instrumentation, and any other NuVasive product, either alone or in combination, that operates in a reasonably similar manner.

225.    Attached to this Complaint as Exhibit I2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '567 patent are met by the '567 Accused Instrumentalities.

226.    NuVasive's infringement of the '567 patent has also been indirect.

227.    On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe one or more claims of the '567 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '567 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '567 patent.

228.    For example, NuVasive has supplied, and continues to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials,

videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '567 Accused Instrumentalities, with knowledge that making and/or using the '567 Accused Instrumentalities in accordance with its instructions directly infringed/infringes at least claim 1 of the '567 patent, or with willful blindness to that fact.  On information and belief, NuVasive will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use its '567 Accused Instrumentalities in ways that directly infringe the '567 patent, and NuVasive has encouraged and will continue to encourage these acts with the specific intent to infringe the '567 patent. Further, NuVasive provides information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and/or use NuVasive's '567 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '567 patent.  Alternatively, NuVasive has acted with willful blindness to these facts.  On information and belief, NuVasive knows that there is a high probability that the making and/or use of NuVasive's '567 Accused Instrumentalities constitutes direct infringement of the '567 patent but took deliberate actions to avoid learning of these facts.

229.    On information and belief, NuVasive's inducement of third parties occurred after it had actual knowledge of, or was willfully blind to, the '567 patent.  The timing of its conduct and the nature of its continued support to third parties demonstrate specific intent to cause infringement.

230.    On information and belief, NuVasive had actual knowledge of the inventions described and claimed in the '567 patent since at least shortly after its issuance in October 2023, as described in Paragraphs above and below.

231.    Alternatively, to the extent actual knowledge is disputed, NuVasive was willfully blind to the existence and relevance of the '567 patent.  Despite receiving notice of Dr. Moskowitz's patent portfolio, including patents and/or publications that led to the '567 patent, from Dr. Moskowitz's counsel in June 2015, NuVasive failed to conduct any known non-infringement or clearance analysis, ignored Dr. Moskowitz's invitation for licensing discussions, and proceeded to commercialize spinal implants embodying the technologies claimed in the '567 patent.  As further detailed above and below, NuVasive's deliberate avoidance of confirming infringement, despite USPTO citations to family members and industry publications (such as, for example, SpineMarket's publications) repeatedly referencing the '567 patent, supports a strong inference of willful blindness.

232.    For example, NuVasive has been aware of the specific inventions described and claimed in the '567 patent since before the patent issued in October 2023.  Between 2010 and 2011, and again in 2015, NuVasive received technical information from Dr. Moskowitz about pending and issued patents in his portfolio.  Dr. Moskowitz's 2015 notice letter identified multiple patents and pending applications—including patents and/or applications that led to the '567 patent.  The '567 patent is a continuation of these patents and/or applications and contains the same figures and technical subject matter disclosed to NuVasive in 2015.

233.    Despite receiving this formal notice, NuVasive never engaged in licensing discussions.  Instead, it proceeded to launch spinal fusion products that embodied the same technologies that Moskowitz had disclosed years earlier—technology NuVasive had repeatedly

expressed interest in but refused to license.  The technologies described in the '567 patent are embodied in at least NuVasive's Simplify systems.  On information and belief, NuVasive acquired and continued to develop and commercialize this product family during the damages period.  The continuity in product line and technology, coupled with NuVasive's contemporaneous awareness of the technology covered and claimed by the '567 patent, support a plausible inference of knowledge of infringement.

234.    NuVasive's awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2011 through its active engagement with Dr. Moskowitz, during which NuVasive sought and received demonstrations and prototypes, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's intellectual property.  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed NuVasive on notice of his patent rights through written correspondence from legal counsel.  The letter sent to NuVasive explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the publication number, filing date, issue date, and title of each.  The asserted '567 patent is a continuation of the patents and pending applications identified in the 2015 letter—and shares the same technical description and figures as those patents and pending applications disclosed to NuVasive.

235.    On information and belief, NuVasive patent prosecution activities further confirm that it has been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '567 patent.  For example,  NuVasive has cited and encountered family members of the '567 patent during prosecution of its own patent applications—starting as early as June 2013.  For example, a USPTO examiner cited Dr. Moskowitz's U.S. Pat. App. Pub. Nos.

2005/0256576 and 2005/0261769, which are related to the '567 patent, during prosecution of NuVasive's own patent application.  On information and belief, NuVasive has continued to monitor Moskowitz Family LLC's patent portfolio since becoming aware of it by no later than 2015.

236.     On information and belief, NuVasive has known that making and/or using its '567 Accused Instrumentalities constitutes an act of direct infringement of the '567 patent since at least shortly after the issuance of the '567 patent in October 2023, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim chart.  To the extent NuVasive lacked actual knowledge of its infringement, such lack of knowledge resulted from its deliberate decision to avoid learning these facts.  NuVasive, therefore, knew or was willfully blind to the fact that making and/or using the '567 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '567 patent.

237.     NuVasive's infringement of the '567 patent has been and continues to be willful and merits enhanced damages under 35 U.S.C. § 284.  NuVasive had actual knowledge of the patent shortly after its issuance and cited related family members repeatedly in its own patent filings.  Alternatively, NuVasive was willfully blind to the existence and relevance of the '567 patent.  NuVasive received direct notice of the '567 patent's parent patents and/or applications in 2015 and, on information and belief, was repeatedly exposed to Dr. Moskowitz's innovations through patent monitoring efforts and public industry reports.

238.     Despite this knowledge, NuVasive continued to manufacture, market, and sell the '567 Accused Instrumentalities.  NuVasive did not seek a license from Moskowitz Family LLC, did not redesign the relevant features, and did not assert any non-infringement or invalidity

positions.  Nor did NuVasive take any steps to resolve its infringement risk or seek clarification from Dr. Moskowitz.  These facts, in conjunction with NuVasive's failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

239.    NuVasive's ongoing commercialization of the '567 Accused Instrumentalities—despite actual knowledge or deliberate indifference—demonstrates egregious disregard for Moskowitz Family LLC's patent rights and supports an award of enhanced damages.

240.    Moskowitz Family LLC has been damaged as a result of NuVasive's willful infringement.

241.    On information and belief, NuVasive will continue to infringe one or more claims of the '567 patent unless and until it is enjoined by this Court.

242.    On information and belief, NuVasive has caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '567 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until NuVasive is enjoined from infringing the claims of the '567 patent.

## COUNT X

### (Infringement of the '743 Patent)

243.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

244.    On information and belief, NuVasive has directly infringed and continues to directly infringe one or more claims of the '743 patent under 35 U.S.C. § 271(a), either literally

or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and is currently making, using, selling, offering for sale, and/or importing the '743 Accused Instrumentalities.  NuVasive's '743 Accused Instrumentalities include, but are not limited to, the Base, Brigade, and CoRoent systems and instrumentation, and any other NuVasive product, either alone or in combination, that operates in a reasonably similar manner.

245.    Attached to this Complaint as Exhibits J2-J4 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claim 1 of the '743 patent are met by the '743 Accused Instrumentalities.

246.    NuVasive's infringement of the '743 patent has also been indirect.

247.    On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe one or more claims of the '743 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '743 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '743 patent.

248.    For example, NuVasive has supplied, and continues to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '743 Accused Instrumentalities, with knowledge that making and/or using the '743 Accused Instrumentalities in accordance with its instructions directly infringed/infringes at least claim 1 of the '743 patent, or with willful blindness to that fact.  On information and belief, NuVasive will continue to encourage, aid, or

otherwise cause these third parties to, for example, make and/or use its '743 Accused Instrumentalities in ways that directly infringe the '743 patent, and NuVasive has encouraged and will continue to encourage these acts with the specific intent to infringe the '743 patent. Further, NuVasive provides information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and/or use NuVasive's '743 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '743 patent. Alternatively, NuVasive has acted with willful blindness to these facts. On information and belief, NuVasive knows that there is a high probability that the making and/or use of NuVasive's '743 Accused Instrumentalities constitutes direct infringement of the '743 patent but took deliberate actions to avoid learning of these facts.

249. On information and belief, NuVasive's inducement of third parties occurred after it had actual knowledge of, or was willfully blind to, the '743 patent. The timing of its conduct and the nature of its continued support to third parties demonstrate specific intent to cause infringement.

250. On information and belief, NuVasive had actual knowledge of the inventions described and claimed in the '743 patent since at least shortly after its issuance in November 2024, as described in Paragraphs above and below.

251. Alternatively, to the extent actual knowledge is disputed, NuVasive was willfully blind to the existence and relevance of the '743 patent. Despite receiving notice of Dr. Moskowitz's patent portfolio, including patents and/or publications that led to the '743 patent, from Dr. Moskowitz's counsel in June 2015, NuVasive failed to conduct any known non-

infringement or clearance analysis, ignored Dr. Moskowitz's invitation for licensing discussions, and proceeded to commercialize spinal implants embodying the technologies claimed in the '743 patent.  As further detailed above, NuVasive's deliberate avoidance of confirming infringement, despite USPTO citations to family members and industry publications (such as, for example, SpineMarket's publications) repeatedly referencing the '743 patent, supports a strong inference of willful blindness.

252.    For example, NuVasive has been aware of the specific inventions described and claimed in the '743 patent since before the patent issued in November 2024.  Between 2010 and 2011, and again in 2015, NuVasive received technical information from Dr. Moskowitz detailing technologies that were ultimately claimed in the '743 patent.  Dr. Moskowitz's 2015 notice letter identified multiple patent and pending applications—including patents and/or applications that led to the '743 patent. The '743 patent is a continuation of these patents and/or applications and contains the same figures and technical subject matter disclosed to NuVasive in 2015.

253.    Despite receiving this formal notice, NuVasive never engaged in licensing discussions.  Instead, it proceeded to launch spinal fusion products that embodied the same technologies that Moskowitz had disclosed years earlier—technology NuVasive had repeatedly expressed interest in but refused to license.  The technologies described in the '743 patent are embodied in at least NuVasive's Base, Brigade, and CoRoent systems. NuVasive continued to develop and commercialize these product families through the damages period beginning in 2019.  The continuity in product line and technology, coupled with NuVasive's contemporaneous awareness of the technology covered and claimed by the '743 patent, support a plausible inference of knowledge of infringement.

254.    NuVasive's awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2011 through its active engagement with Dr. Moskowitz, during which NuVasive sought and received technical information, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's intellectual property.  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed NuVasive on notice of his patent rights through written correspondence from legal counsel.  The letter sent to NuVasive explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the publication number, filing date, issue date, and title of each.  The asserted '743 patent is a continuation of the patents and pending applications identified in the 2015 letter—and shares the same technical description and figures as those patents and pending applications disclosed to NuVasive.

255.    On information and belief, NuVasive patent prosecution activities further confirm that it has been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '743 patent.  On information and belief, NuVasive has continued to monitor Moskowitz Family LLC's patent portfolio since becoming aware of it by no later than 2015.  For example,  NuVasive has cited and encountered family members of the '743 patent during prosecution of its own patent applications—starting as early as June 2017.  For example, a USPTO examiner cited Dr. Moskowitz's U.S. Pat. No. 7,942,903, which is a parent of the '743 patent, in connection with the Notice of Allowance during prosecution of NuVasive's own patent application.

256.    On information and belief, NuVasive has known that making and/or using its '743 Accused Instrumentalities constitutes an act of direct infringement of the '743 patent since at least shortly after the issuance of the '743 patent in November 2024, and received additional

notice through the filing and service of this Complaint, as demonstrated by the attached claim charts. To the extent NuVasive lacked actual knowledge of its infringement, such lack of knowledge resulted from its deliberate decision to avoid learning these facts. NuVasive, therefore, knew or was willfully blind to the fact that making and/or using the '743 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '743 patent.

257. On information and belief, NuVasive has indirectly infringed and continues to indirectly infringe the '743 patent under 35 U.S.C. § 271(c) because it has contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) of at least claim 1 of the '743 patent. For example, NuVasive has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '743 Accused Instrumentalities (such as implants) to these third parties with full knowledge of the '743 patent. These third parties have assembled the components to make and use the '743 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to assemble and use the components of the '743 Accused Instrumentalities in ways that infringed/infringe the '743 patent. NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Further, NuVasive's components constituted/constitute a material part of the inventions claimed in the '743 patent. NuVasive supplied/supplies these components with knowledge of the '743 patent and knowledge that the components were/are especially made for use in an infringing manner.

258.    On information and belief, NuVasive has also indirectly infringed and continue to indirectly infringe the '743 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '743 Accused Instrumentalities (such as implants) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 1 of the '743 patent if such combination occurred within the United States.  For example, NuVasive has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '743 Accused Instrumentalities with full knowledge of the '743 patent. These third parties have made or used the '743 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '743 Accused Instrumentalities and use them in ways that would infringe the '743 patent if such combination occurred within the United States.  NuVasive provides these instructions to the third parties with the knowledge that assembly and usage in accordance with its instructions would infringe the '743 patent if such assembly and usage took place in the United States.  Additionally, NuVasive's components are especially made and/or especially adapted for use in an infringing manner and NuVasive's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

259.    On information and belief, NuVasive's actions demonstrate an intent not only to cause the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also to cause these acts with the specific intent to infringe the '743 patent.  At a minimum, NuVasive's

conduct demonstrates that NuVasive either knew or should have known that the acts of such third parties directly infringed/infringe the '743 patent (or would infringe if those acts occurred within the United States).

260.    NuVasive's infringement of the '743 patent has been and continues to be willful and merits enhanced damages under 35 U.S.C. § 284.  NuVasive had actual knowledge of the patent shortly after its issuance and cited related family members repeatedly in its own patent filings.  Alternatively, NuVasive was willfully blind to the existence and relevance of the '743 patent.  NuVasive received direct notice of the '743 patent's parent patents and/or applications in 2015 and, on information and belief, was repeatedly exposed to Dr. Moskowitz's innovations through patent monitoring efforts and public industry reports.

261.    Despite this knowledge, NuVasive continued to manufacture, market, and sell the '743 Accused Instrumentalities.  NuVasive did not seek a license from Moskowitz Family LLC, did not redesign the relevant features, and did not assert any non-infringement or invalidity positions.  Nor did NuVasive take any steps to resolve its infringement risk or seek clarification from Dr. Moskowitz.  These facts, in conjunction with NuVasive's failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

262.    NuVasive's ongoing commercialization of the '743 Accused Instrumentalities—despite actual knowledge or deliberate indifference—demonstrates egregious disregard for Moskowitz Family LLC's patent rights and supports an award of enhanced damages.

263.    Moskowitz Family LLC has been damaged as a result of NuVasive's willful infringement.

264.    On information and belief, NuVasive will continue to infringe one or more claims of the '743 patent unless and until it is enjoined by this Court.

265.    On information and belief, NuVasive has caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '743 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until NuVasive is enjoined from infringing the claims of the '743 patent.

## JURY DEMAND

266.    Moskowitz Family LLC requests a jury trial as to all issues that are triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Moskowitz Family LLC respectfully requests that this Court:

A.    Enter judgment that NuVasive has infringed one or more claims of each of the Asserted Patents;

B.    Enter an order permanently enjoining NuVasive and its officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the Asserted Patents;

C.    Award Moskowitz Family LLC all appropriate damages for the infringement of the Asserted Patents, including pre-judgment and post-judgment interest, costs, and all other relief permitted under 35 U.S.C. § 284;

D.    Award Moskowitz Family LLC an accounting for acts of infringement not presented at trial, including an award of additional damages for such acts of infringement;

E.      Enter judgment that NuVasive's infringement of each of the Asserted Patents has been deliberate and willful;

F.      Treble the damages awarded to Moskowitz Family LLC under 35 U.S.C. § 284 by reason of NuVasive's willful infringement of one or more claims of each of the Asserted Patents;

G.      Declare this case to be "exceptional" under 35 U.S.C. § 285 and award Moskowitz Family LLC its attorneys' fees, expenses, and costs incurred in this action; and

H.      Award Moskowitz Family LLC such other and further relief at law or in equity as the Court deems just and proper.

Dated: June 6, 2025                    Respectfully submitted,

                                       **FARNAN LLP**

                               By:     */s/ Michael J. Farnan*
                                       Brian E. Farnan (Bar No. 4089)
                                       Michael J. Farnan (Bar No. 5165)
                                       919 North Market Street, 12th Floor
                                       Wilmington, DE 19801
                                       Phone: (302) 777-0300
                                       bfarnan@farnanlaw.com
                                       mfarnan@farnanlaw.com

                                       **AVANTECH LAW, LLP**

                                       William R. Woodford (*pro hac vice* forthcoming)
                                       Todd S. Werner (*pro hac vice* forthcoming)
                                       Jason M. Zucchi (*pro hac vice* forthcoming)
                                       Shelleaha L. Jonas (*pro hac vice* forthcoming)
                                       80 South 8th Street, Suite 900
                                       Minneapolis, MN 55402
                                       Phone: (612) 895-2721
                                       woodford@avantechlaw.com
                                       werner@avantechlaw.com
                                       zucchi@avantechlaw.com
                                       jonas@avantechlaw.com

                                       Julie Thomsen (*pro hac vice* forthcoming)
                                       521 5th Avenue, 17th Floor
                                       New York, NY 10175-0038

Phone: (855) 750-9951
thomsen@avantechlaw.com

**Attorneys for Plaintiff**
**Moskowitz Family LLC**